## THOMPSON et al. v. CITY OF HOUMA, LA.
### No. 7526.

Circuit Court of Appeals, Fifth Circuit.

March 25, 1935.

C. Elliot Thompson and J. C. Theus, both of Monroe, La., and Harry McCall and Jacob H. Morrison, both of New Orleans, La., for appellants.

Henry P. Dart, Jr., and H. Grady Price, both of New Orleans, La., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

BRYAN, Circuit Judge.

This is an appeal by the plaintiffs in an action to recover damages from the city of Houma, a Louisiana municipal corporation, for personal injuries sustained when an automobile in which they were passing through the city was driven by mistake off the end of Lafayette street into Bayou Terrebonne. The city was charged with negligence in failing to maintain adequate barriers or signs at the approach to the bayou for the protection of the traveling public.

Lafayette street extends from the city limits on the south to the bayou on the north. It is intersected 90 feet south of the bayou by Main street, which runs east and west parallel with the bayou. South and east of the intersection both streets are well lighted and paved with concrete; but that part of Lafayette street north of the intersection has no street lights and is not paved or otherwise improved, except for a triangular area of shell and gravel which comes to a point about halfway to the bayou, thus leaving 45 or 50 feet of uneven ground covered with grass next to the bayou. Extending across the end of this street, except for a recess of 10 feet in the center, is a bulkhead which rises above the ground some 16 inches. There is no appreciable change in elevation between the intersection and the bulkhead. There is no street leading from the opposite bank of the bayou in line with

Lafayette street. The Old Spanish Trail, United States highway No. 90, follows Lafayette and Main streets through the city turning at the intersection above described. At the northeast corner of that intersection was a large sign with an arrow pointing east and the words "To New Orleans" printed on it in large letters; and 117 feet to the south on the east side of Lafayette street was a highway marker indicating a right turn onto Main street. Both the sign and the marker could easily be seen by the light of a 250 c. p. street lamp located at the southwest corner. As one comes north up Lafayette street, on the right about eight feet above ground are at least nine highway markers which are made visible at night by street lights.

The accident occurred at night. The occupants of the car, a two-door Ford sedan, were Herbert C. Thompson, his wife, two grown daughters, Elizabeth and Ruth, three children under seven years of age, and a young man named Bourg. They were traveling over the Old Spanish Trail from Beaumont, Tex., where they lived, on their way to New Orleans, and reached Houma about 4 o'clock a. m. They were all wholly unfamiliar with the streets of Houma and with the course of the highway in that vicinity. At the city limits they turned north on Lafayette street. The speed limit prescribed by ordinance was 15 miles an hour, and that information appeared on an illuminated street sign. Mr. Thompson, who was driving, testified that he did not see the speed limit sign or any of the highway markers; that he drove across Main street without slowing down at about 20 miles an hour, and that, although as he did so he heard some one shout "hey, hey," he proceeded beyond the intersection about 40 or 50 feet when he saw what he "was into," and then applied the service and emergency brakes, but not being able to stop the car, he turned it to the right into the bulkhead, bursting the left-front tire, and breaking loose the front axle, with the final result that the car and its occupants were precipitated into the bayou. He estimated that he first saw the water when he was about 10 feet away from the bayou, which at that point is 85 feet in width. He sought to justify his mistake of continuing on Lafayette street north of Main by saying he was misled by the circumstances that there were an overhead unlighted traffic signal in the center of the intersection, a traffic line along the middle of Lafayette street which extended to the end of the pavement, and a street light some 400 or 500 feet directly ahead. That light, however, was on another street running parallel with, and 145 feet north of, the bayou. Mrs. Thompson and daughters, Elizabeth and Ruth, also testified that they saw no highway signs, but did see the unlighted traffic signal and the street light in the distance; but they, too, admitted hearing the warning cries, which according to defendant's evidence were given by a policeman who was standing at the northwest corner of the intersection. Mr. Thompson said he ignored the policeman's efforts to have the car stopped because it was dark and he did not know it was an officer who was calling to him. There was evidence tending to show that the lights and brakes of the car were in good condition.

■ The city, as we think, breached no duty which in the exercise of reasonable care it owed to these plaintiffs. It had its streets along the highway so well marked and lighted that a careful motorist had no excuse for losing his way. It could not reasonably have anticipated that motorists, who intended not to use its streets generally, but only to follow the Old Spanish Trail, would disregard the well-lighted road markers and signs maintained for their information and guidance. The plaintiffs, however it might be as to others differently situated, are not entitled to complain on the ground that the city failed to maintain barriers or signs on the unimproved portion of Lafayette street. Texas & P. R. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S. W. 640, 49 L. R. A. 771, 77 Am. St. Rep. 898; Palsgraf v. Long Island R. Co., 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253. At any rate, it would seem that the shouts of the policeman, who was standing at the street corner where plaintiffs could have seen him had they taken the trouble to look, constituted sufficient warnings of danger.

■ Assuming, however, that the city failed in some duty it owed to the plaintiffs, we are none the less of opinion that the judgment below was right. The driver of the automobile was clearly negligent. It will not do for him to say that he did not see the policeman, or that he did not see the road signs which were in plain view and called for a right turn onto Main street. So far as he was concerned, it was immaterial whether or not Lafayette street extended further north, and so there was no reason why he should have been misled by

the appearance of things at or beyond the intersection. Upon passing Main street at a rate of speed in excess of the legal speed limit, Mr. Thompson should have seen immediately ahead of him, instead of a traveled highway, uneven ground grown up in grass and just beyond a bulkhead. He testified that he did not see the grass at all, but he admitted that he saw the bulkhead when he came within 40 or 50 feet of it. Considering the damage done to the car and the momentum with which it must have struck the bulkhead, the explanation of his inability to stop before he ran it into the bulkhead can only be either that he was driving too fast, or that the brakes were defective or inadequate to hold the heavy load. Even if the driver could not see the bayou until he was within 10 feet of it, there was no road in sight ahead of him. Under these circumstances, not only the driver but all the other plaintiffs as well are barred of any right of recovery; for, as it appears to us, the driver's failure to exercise ordinary care was the proximate and only cause of the accident. As a general rule, it is negligence to so drive an automobile at night as that the driver cannot stop it within the distance obstructions on the highway ahead can be seen by the light from the headlights. Lauson v. Fond du Lac, 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40, 135 Am. St. Rep. 30; Fisher v. O'Brien, 99 Kan. 621, 162 P. 317, L. R. A. 1917F, 610; Weston v. Southern R. Co., 194 N. C. 210, 139 S. E. 237; Smith v. Southern R. Co. (C. C. A.) 53 F.(2d) 186.

Conceding that the rule has its limitations, we think it is applicable in this case. The plaintiffs were all strangers to the highway and the streets of Houma; none of them had any knowledge of the turns of the highway or the streets, or of any obstructions that might be in their way. Under the circumstances here disclosed, the bayou was only a condition and not the proximate cause of the accident. Orton v. Penn. R. Co. (C. C. A.) 7 F.(2d) 36; Western Union Telegraph Co. v. Stephenson (C. C. A.) 36 F.(2d) 47; Smith v. Southern R. Co., supra; Brown v. Southern R. Co. (C. C. A.) 61 F.(2d) 399. Bayou Terrebonne is a navigable waterway, and is not to be compared with hidden defects and pitfalls; or even with a canal dug across a highway and left unguarded, thus causing a prudent driver to be deceived into believing that the road ahead of him is safe.

The judgment is affirmed.