RECTOR v. ALLIED VAN LINES, Inc., et al.

ROGERS v. SAME (two cases). Nos. 6119-6121.

Court of Appeal of Louisiana. Second Circuit.

July 5, 1940.

Rehearing Denied Aug. 1, 1940.

Certiorari Refused Oct. 9, 1940.

Blanchard, Goldstein, Walker & O'Quin and Ben C. Dawkins, Jr., all of Shreveport, Marc Dupuy, of Marksville, for appellants Allied Van Lines, Inc., and others.

Gist & Thornton and Leo Gold, all of Alexandria, for appellant Travelers Mut. Casualty Co.

A. J. Roy, of Marksville, for appellant Ford Bros. Van & Storage Co.

Madison, Madison & Files, of Bastrop, and Philo Coco, of Marksville, for appellees.

HAMITER, Judge.

Shortly after 1 o'clock of the morning of September 6, 1937, a large motor truck driven by Walt McCampbell crashed into the rear end of a 1930 model Chevrolet sedan that was parked on U. S. Highway 71 at a point about 7½ miles south of Bunkie, Louisiana. Both machines fronted in a northerly direction and were on their right or the east side of such highway. They came to rest a short distance apart, in a ditch that lies east of the pavement and parallel to it.

Occupants of the Chevrolet were Mildred McLeod and Harley Rogers, Jr., who have since married; and James Rector. The last-named person died a few hours after and as a result of the collision. The others sustained certain injuries.

Three suits followed. Mrs. Zelima Rector, the widow of the deceased, sues in her individual capacity and as tutrix of their minor child, Patricia Ann Rector, claiming damages allegedly occasioned by the death. The other suits are brought, respectively, by Harley Rogers, Jr., and Mrs. Mildred McLeod Rogers, the survivors of the accident, to recover for the injuries that they received.

Impleaded as defendants in each cause are Ford Brothers Van & Storage Company, owner of the truck and the employer of the driver McCampbell, and hereinafter referred to as Ford Brothers; the Allied Van Lines, Inc., an incorporated association of which the truck's owner is a member and agent; the Travelers Mutual Casualty Company of Des Moines, Iowa, the insurer of the truck; and the Hartford Accident and Indemnity Company, which issued an

insurance policy in favor of Allied Van Lines, Inc. No judgment is asked against the driver McCampbell.

The petition of each plaintiff alleges the manner of the occurrence of the accident and concludes that the sole cause thereof was the negligent and reckless driving of the truck by McCampbell. It is also averred therein that the truck was being operated by and for the said Ford Brothers and the Allied Van Lines, Inc. The doctrine of respondeat superior is invoked as a basis for the contended liability of the defendants.

All defendants (except the Travelers Mutual Casualty Company, which filed no answer) deny that McCampbell was negligent, and alternatively plead contributory negligence on the part of the occupants of the Chevrolet.

Allied Van Lines, Inc., and its insurer, Hartford Accident and Indemnity Company, as stated in the brief of their counsel, "defend on the additional ground that, even if the alleged negligence of McCampbell be assumed the doctrine of respondeat superior does not apply to them because he was not Allied Van Lines' servant or agent, either directly or remotely, and that accordingly no liability should attach to them."

The cases were consolidated and tried together, All defendants were condemned in solido to pay to Mrs. Zelima Rector individually $5,000, and as tutrix of the minor $10,000; and to pay to Harley Rogers, Jr., and Mrs. Mildred McLeod Rogers the sum of $250 each.

The defendants appealed from the judgments.

By way of answer to the appeals, increases of the awards are requested by the respective plaintiffs.

The issues of the three cases, except as to quantum, are identical; and all will be discussed and treated in this opinion.

The record discloses that the occupants of the Chevrolet departed from New Orleans during the evening of September 5, 1937, on a journey north to their homes in Bastrop, Louisiana. When they reached the above-mentioned point on U. S. Highway 71, about midnight, their machine stopped because of its gasoline supply being exhausted. Several attempts were made to obtain fuel from passing motorists, but success did not attend these efforts. Thereupon, so testify Mr. and Mrs. Rogers, they pushed the car off the pavement onto the east grassy shoulder of the highway and all went to sleep in it, leaving both front and rear lights burning.

The highway north and south of the place of stoppage is straight for a number of miles; and it consists of a concrete slab 18 feet wide with 5-foot grassy shoulders. The nearest intersecting road is one-half mile to the south.

One Cleveland Frank, according to his own testimony given as a defense witness, traveled north on that highway on said morning of September 6, 1937, with Bunkie, Louisiana, as his destination, and passed the location in question about 1 o'clock. He was proceeding 25 to 30 miles per hour, and first observed the parked Chevrolet when 30 or 40 yards (90 or 120 feet) south of it. At least part of it extended over the pavement. No lights were burning thereon. The weather was "kind of foggy". He swerved his machine to the left and around it. Approximately one and one-half hours later he returned and witnessed wreckage that evidenced the occurrence of the collision.

Some minutes after Cleveland Frank passed the locus on his northerly journey, Walt McCampbell approached in his truck. States the latter: "It must have been about 1 o'clock, as near as I can say". This vehicle consisted of a large van, 8 feet in width and containing a space of 1200 cubic feet, pulled by a Ford V-8 tractor. The over-all length of the equipment was 36 feet, and it weighed ten or eleven thousand pounds. It was traveling empty from New Orleans to Shreveport. McCampbell, according to his testimony, was driving "maybe 30 or 35 miles per hour", and was about 25 or 30 feet from the Chevrolet before he saw it. The headlights on the truck were good, but no estimation as to the distance they reflected could be given. The windshield wiper was functioning properly. With reference to the density of the fog existing there, he says, "I would say about medium, I would not say it was a real heavy fog". It is his belief that the left rear wheel of the parked machine stood on the pavement approximately 3 or 3½ feet from the east edge thereof, and that none of the lights thereon burned. On seeing this stationary object ahead, he did everything possible to avoid hitting it, such as swerving the truck to the left and attempting to apply the brakes. The truck's right front wheel struck the Chevrolet about the center of its rear end.

The evidence is convincing that the Chevrolet was not parked entirely on the grassy shoulder, as Harley Rogers, Jr., alleges and testifies. A preponderance of the testimony and the physical facts furnish the conclusion that such car was sitting at a very slight angle on the highway with the right wheels on the grassy shoulder and the left ones on the pavement. The left rear wheel, as McCampbell correctly states, rested on the pavement at a point 3 or 3½ feet from its east edge; hence, in view of this position and after allowing 1 foot for the car's rear extension, a clearance of less than 15 feet remained on the 18-foot concrete slab. This finding with reference to the position of the left rear wheel is supported by the established facts that the car's gasoline tank was struck about its center by the truck's right front wheel and no part of the truck left the pavement before the contact was made.

Perhaps the lights of the Chevrolet were on when the occupants commenced their slumber, as the survivors testify; but it is seriously doubted that such condition endured at the moment of the collision. Both Cleveland Frank and Walt McCampbell say that no lights were aglow.

Two provisions of the then effective Highway Regulatory Statute of this state were violated by the occupants of the Chevrolet in the parking method employed. They failed to leave a clear and unobstructed width of not less than 15 feet upon the main traveled portion of the highway, which is the concrete slab, and no appropriate signal lights were thereafter continuously displayed; all of which was required by Rule 15, Section 3 of Act 21 of 1932. Consequently, they were negligent as a matter of law. It is important to determine, however, whether or not their negligence was a proximate cause of the collision.

Obviously, McCampbell was also negligent in his operation of the truck. Either he failed to maintain the required control of such truck and contravened the well-recognized principle of law that a driver of a motor vehicle at night, on encountering view impairing agencies such as bright lights, fog, dust, rain or smoke, must reduce the speed of the machine so that he will be able to stop it within the distance that the highway is illuminated by the lights; or he was not keeping the proper lookout ahead that the law demands.

His breach of either of these rules of the road constituted active negligence; while the negligence of the occupants of the Chevrolet was only passive.

In the case of Locke v. Shreveport Laundries, Inc., 18 La.App. 169, 137 So. 645, 648, which involved the striking and killing of a pedestrian on the highway by a motor vehicle driven by defendant's employee who was blinded by headlights of an approaching machine, this court said:

"It has often been held that it is negligence for one to leave his automobile parked on a street without lights thereon, but it does not follow that one doing damage to the parked car can escape the consequences of his own act when the injury was occasioned by active negligence, such as failure to keep proper lookout or running at an excessive rate of speed in dust, mist, or in the face of blinding lights of another automobile.

\* \* \* \* \*

"It is obvious that had Norman observed the mandatory requirements of the highway law his truck would not have run into and killed Locke; and the fact that Locke may have been on the wrong side of the highway was not the proximate, but a very remote, cause of the accident."

It is our belief, and we find, that the infraction of the law committed by the driver McCampbell was his failure to maintain a proper lookout ahead. Admittedly, he first observed the parked Chevrolet when only 20 to 30 feet from it and his lights were good; whereas Cleveland Frank saw it when from 90 to 120 feet away and was able to maneuver his machine and avoid a collision. The latter passed the locus a few minutes before the accident, while similar weather conditions prevailed, and his speed was almost identical with that of the truck driver. If McCampbell had watched the road ahead attentively, as he was duty bound to do and as Cleveland Frank did, a like avoidance would have been experienced by him.

This finding, together with the others above mentioned, seems to render applicable here the doctrine announced by the Supreme Court in Jackson v. Cook, 189 La. 860, 181 So. 195, 198. Plaintiff, in that case, was struck and injured by defendant's car while staggering in a drunken condition on the wrong side of the highway, in violation of a state statute. The driver of the machine, who was defendant's son, was proceeding at a speed of 20 to 25 miles

per hour and did not see the pedestrian until within 5 feet of him. The Court, in ruling in plaintiff's favor, held applicable the last clear chance doctrine; and in this regard it said: "In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking."

In Shipp v. St. Louis Southwestern Ry. Co., 188 So. 526, 528, this court pertinently observed that the jurisprudence of this state is now well settled,—

"1. That in considering and applying the doctrine of the last clear chance, persons, operating motor vehicles and railroad trains are, in legal contemplation, held to see what they can see, or by the exercise of due diligence, they could have seen; and

"2. That the negligence of the injured or killed person down to the moment of the accident causing the injury or death, is not a peremptory bar to recovery of damages by him or his heirs. Rottman v. Beverly et al., 183 La. 947, 165 So. 153; Hicks v. Texas & N. O. R. Co., 186 La. 1008, 173 So. 745; Jackson v. Cook, 189 La. 860, 181 So. 195; Loewenberg v. Fidelity Union Casualty Co., La.App., 147 So. 81; Iglesias v. Campbell, La.App., 175 So. 145; Davidson v. American Drug Stores, La.App., 175 So. 157; Hantel v. Service Drayage Co., La.App., 177 So. 425."

Under the existing jurisprudence, it must be held in the instant case that the negligence of McCampbell in failing to exercise due diligence in his driving and to avert the collision, as could have been done, was the proximate and immediate cause of the accident, while the negligence of the Chevrolet's occupants was the remote cause; that the last clear chance was with him; and that plaintiffs are entitled to obtain repairment of the damages occasioned them, notwithstanding their negligence continued to the moment of the accident.

Defense counsel call our attention to and strongly rely upon Hudson et al. v. Provensano, 149 So. 240, decided by the Court of Appeal of the First Circuit, in support of their contention that contributory negligence of the Chevrolet occupants bars recovery herein. It may be said with reference to that case, the facts of which are very similar to those under consideration, that the doctrine of the last clear chance was not therein considered and it was decided previous to the decision in Jackson v. Cook, supra.

Next to be decided is the question of responsibility for McCampbell's negligence of the several defendants in these suits.

With reference to the Travelers Mutual Casualty Company, which was decreed solidarily liable with the other defendants, we find that issue between it and plaintiffs was never joined. Citations to that defendant were served on the Secretary of State of Louisiana; and it challenged the validity of the service and the jurisdiction of the court through the filing of various declinatory exceptions. These were overruled. At no time thereafter did it answer or suffer judgment by default to be taken. Furthermore, it took no part in the trial of the cases on the merits. The joining of issue is in fact the foundation of a suit, Code of Practice, Article 359; and as such did not occur with respect to this defendant, the judgments against it on the merits were irregular, illegal and null. Chopin v. Freeman, 145 La. 972, 83 So. 210; Robinson v. Enloe, 10 La. App. 435, 121 So. 320. Incidentally, we are unable to review the decree of the district court in each case overruling the above-mentioned declinatory exceptions, as defense counsel request us to do, because it is not such a decree that would sustain an appeal. It is only interlocutory in character, and has caused defendants no irreparable injury. Code of Practice, articles 565 and 566. The judgments on the merits against said defendant Travelers Mutual Casualty Company being void, the cases with respect to that defendant must resume the status that existed at the time of the rendition of those judgments.

Let us consider now the separate defense made by the Allied Van Lines, Inc., and its insurer, the Hartford Accident and Indemnity Company, that the respondeat superior doctrine is inapplicable to them. Ford Brothers, which is engaged in the business of transfer, storage and long distance moving and maintains establishments at Omaha, Nebraska, and Council Bluffs, Iowa, was the owner of the truck and the employer of the driver McCampbell; and it had control and supervision over both of

them. It provided and paid for insurance on the vehicle, written by the Travelers Mutual Casualty Company of Des Moines, Iowa, and also furnished everything necessary for the maintenance, repair and operation thereof. The required licenses were applied for and purchased by it. Written on the van, which was painted yellow, were such words as, "Allied Van Lines"; "Ford Brothers Van and Storage"; "Agents in Principal Cities"; "Long Distance Moving."

· Allied Van Lines, Inc., is an incorporated trade association, operated as an activity for and composed of members of the National Furniture Warehousemen's Association. The primary purpose of it is to provide return loads for those members of the last-named association, including Ford Brothers, which engaged in the long distance transportation of property, particularly household goods, from one city to another. In furtherance of the interest of a member, and pursuant to agreement, Allied Van Lines, Inc., at times directs a truck of such member to proceed from one point to another for the purpose of obtaining a cargo to be transported; otherwise it has no supervision or control over such vehicle or the driver thereof. No trucks are owned or operated by it; but contingent public liability and property damage insurance are carried with the view of providing protection against lawsuits in which it is improperly joined as a party defendant.

Allied Van Lines, Inc., as its counsel correctly state, "is nothing more than a non-profit, freight co-ordinating agency. It is operated for the private profit of each of its members, not for its own profit as an organization. Through the co-operation of its various members over the country and through the co-ordination made possible by its widespread facilities, Allied Van Lines finds return loads for the trucks owned by its members, advises the members, or their truck drivers, of the availability of these loads and thus saves the members the expense of having their trucks 'deadhead' back to their home locations. Through this medium the individual truck owners reduce their expenses and increase the profits of their businesses."

The truck involved herein transported a shipment of household goods from Omaha, Nebraska, the location of Ford Brothers' establishment, to Memphis, Tennessee. From this city it moved another shipment of household goods to New Orleans, after the driver received instructions from the Atlanta office of Allied Van Lines, Inc., to do so. The New Orleans office of the association directed that the truck go to Shreveport to secure there a load destined for the truck's home base, Omaha, Nebraska; and it was during this journey, while the truck was traveling empty, that the collision resulted.

◼ Inasmuch as the activities of the Allied Van Lines, Inc., as shown by the evidence, were restricted to the arranging and scheduling of shipments in behalf of its members and of notifying the respective truck drivers of the arrangements made, all without profit to it, we think that neither it nor its contingent liability insurer, the Hartford Accident and Indemnity Company, is responsible for the consequences of McCampbell's negligent driving. Applicable here is the following observation found in Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 9, § 5859:

"Where a co-operative business association has no capital stock, but issues a membership certificate to each member, it may be considered as the agent for the members jointly in carrying out the purposes of the association. But a motor vehicle owned by a member does not lose its individual identity but remains subject to his control and management. He is therefore no less responsible for its operation than if he were conducting his business alone.

"While it may be said that, for certain purposes, the association is the agent of the owner and to that extent is the instrumentality through which he conducts the business, yet as to the operation of the machine the organization is not his agent so as to be responsible for damages growing out of its negligent operation, even though a part of the agent's service to the member was the employment of the driver. The association, therefore, is not a proper party to be sued, but the action should be against the individual member owning the vehicle which causes the injury."

The fact that the defendant presently under consideration was an incorporated organization makes no material difference. It was nonetheless merely a non-profit trade association, functioning solely in behalf of and for the benefit of its members as their respective individual interests might appear.

The case of Rogers v. Silver Fleet System of Memphis et al., La.App., 180 So. 445, 450, cited and relied on by plaintiffs, is clearly distinguishable. Important distinctions to be noted are that therein the Silver Fleet System operated a regular freight service, in connection with which it owned and also contracted for trucks and maintained depots and terminals, and the profits accruing from the business belonged exclusively to and were retained by it; and the truck responsible for the accident in that case was being driven for and in the interest of such defendant. The Allied Van Lines, Inc., according to the record, conducts no similar operations.

There is no contention in this controversy that the respondeat superior doctrine is inapplicable to Ford Brothers. On the other hand, the evidence is overwhelming that McCampbell was its employee, and, at the time of the collision, was engaged in the performance of the duties of his employment.

Decedent, James Rector, was a welder by trade, and when working he received $12 per day for his services; however, he did not enjoy continuous employment. During the several years previous to his death he was engaged on jobs at different times in South Carolina, Georgia, Tennessee, Mississippi, and Louisiana. His age, on the occurrence of the collision, was 30 years, and he possessed a life expectancy of 35.33 years. Apparently no suffering was experienced by him from the moment of the accident until his death, an intervening period of about three hours. When carried to the hospital he was unconscious and consciousness was never regained.

For the loss of decedent's support, love and companionship the district court awarded damages to Mrs. Zelima Rector, as before shown, of $5,000 for her individual account, and additionally, $10,000 for the use and benefit of the six-year old minor child of their union. We have no criticism to make of the award to the widow in her individual capacity. It is our belief, however, that a reduction of $5,000 should be made in the one for the child's benefit, in view of the existing jurisprudence relating to similar situations.

The damages granted to Mrs. Mildred McLeod Rogers and Harley Rogers, Jr., in the amount of $250 each, do not appear to be either excessive or inadequate.

Both were injured to some extent, but their injuries were not serious.

Accordingly, it is ordered, adjudged and decreed that the judgments against Allied Van Lines, Inc., and Hartford Accident and Indemnity Company be and they are reversed and set aside and plaintiffs' demands with respect to those defendants are rejected; that insofar as the Travelers Mutual Casualty Company of Des Moines, Iowa, is concerned the judgments are reversed and set aside and the cases are remanded for further proceedings according to law, the costs of which new proceedings are to abide the final determination thereof; and that the judgments against Ford Brothers Van and Storage Company, in favor of the respective plaintiffs, are amended to the extent of reducing the award made to Mrs. Rector for the use and benefit of the minor child, Patricia Ann Rector, from $10,000 to $5,000, and, as amended, they are affirmed. Costs of both courts shall be paid by defendant, Ford Brothers Van and Storage Company.