**SHELL OIL CO., Inc., v. SLADE et al.**
No. 10353.

Circuit Court of Appeals, Fifth Circuit.
Feb. 2, 1943.
Rehearing Denied March 12, 1943.

Thomas H. Watkins, of Jackson, Miss., William Saunders Henley, of Hazlehurst, Miss., and Harry McCall, of New Orleans, La., for appellant.

Ross R. Barnett and P. Z. Jones, both of Jackson, Miss., and Frank F. Mize, of Forest, Miss., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The complaint for death damages resulting from an automobile collision in a fog was in two counts. The first count charged negligence, the second maintenance of a nuisance. The gravamen of both counts was that: for a long period of time prior to the injury, defendant had permitted the discharge from its plant into an open drainage ditch and thence into a canal along the side of the highway of large quantities of very hot water with the result that in the cool of the evenings and early mornings they created dense and heavy fogs immediately above the paved highway; and that plaintiffs' intestate, driving along it at about 7:15 on the morning of March 4, 1940, with his vision wholly obscured on said occasion by said dense and heavy fog and cloud so that he could not, and did not, see it, had run into and against a truck which had been overturned on the shoulder of the highway.

The defendant, admitting that at the time plaintiffs' decedent came to his death there was a dense fog over the highway which wholly obscured the vision of all persons driving vehicles thereon, alleged that the death was caused by the decedent's own contributory negligence in driving into the fog at a rate of speed such that he could not stop within the range of his vision.

Tried to a jury, while the evidence was conflicting as to whether the heavy

fog which admittedly was present was caused or contributed to by defendant's discharge of hot water into the highway canal, there was sufficient evidence to support the verdict of the jury that it was. The evidence, however, as to the blinding nature and extent of the fog and as to how the accident came about was without substantial conflict. All of the witnesses put on by plaintiff agreed that a thin fog began at least one-half mile from the place of the accident and that when the drivers entered the thin fog they could see a heavy fog ahead; that the line between the thin fog and the thick fog was like looking out of a lighted room into a dark one;[1] that the

---

[1] As Rogers described it: "It looked like a cloud sitting down there and when you ran into it you had to be pretty cautious. There was a spot in there about 100 feet or so that was extremely thick. I knew I was taking a chance that morning when I ran into that fog." Greer testified: "I was about one-half mile from the thick fog when I looked in my rear view mirror and saw Slade coming about 250 yards behind me. I was going about 35 miles per hour. As I began to slow down, I blinked my lights and then I ran into a thick fog that cut off vision altogether. When I hit the thin fog, I was going about 20 or 25 miles per hour and I was slowing down all the time. My vision became obstructed when I hit the thick fog. When I was in the thin fog, the thick fog did not look like fog to me. It looked like smoke over the road and you couldn't tell what distance it was. Driving into the fog you would get into it before you could see it. I knew where I was and I had seen fog awful thick rising from that ditch." He further testified that as he got into the thick fog, he suddenly came on a parked truck, that he went around the truck on the shoulder of the road and ran into another truck and turned over to avoid hitting it; that Slade came on following the route he had taken and ran into the back end of his truck, running about 46 feet after he made his right turn off the paved road, and that when he hit the truck, Slade was making about 20 miles per hour; that Slade had driven about 90 feet from where Greer went into the thick fog; there was nothing between him and Slade to keep Slade from seeing his truck as it disappeared into the fog. "When I got into the thick fog, he was about 250 yards behind, and he could have stopped three or four times in that space. He could have slowed down to 5 miles an hour after seeing me disappear into the fog and if he had been going at that rate he could have stopped in five feet." That he (Greer) could not see in the fog over 10 or 15 feet, and that if Slade had brought his truck down to 5 miles an hour, there would have been no reason for his running into Greer. He testified that he did not change gears. He did not know whether Slade did or not. That he knew he was taking a chance in driving into that fog at 20 or 25 miles an hour. That Slade was one of the best drivers they had and one of the fastest. Finn testified that when he first got into the fog he could see, but after a certain distance the visibility was nil; that before he got into the fog, he could see the bank of fog across the highway as he approached it. The fog was so thick that there was no visibility as far as driving was concerned. "You couldn't see into the fog, you would have to stick your head out of the window and look where the black line was so you could go on through." Arnold, the truck driver who was run into by Greer, testified that after he and Greer had had their collision he saw Slade coming. "I was in the cab of my truck. My truck was still. When I saw Slade coming the Greer truck had not turned over altogether. Slade came along and hit us, and we all went down." As to Slade's speed, he said, "It is hard to tell how fast he was driving, but I know he couldn't have been driving on the shoulder more than 10 miles per hour." He also said that Greer and Slade were driving at the same rate of speed, and that he couldn't see whether he was going 10, 15 or 20 on the highway, that off the highway he couldn't have been going more than 10 miles an hour. As to the collision, he said, "A man came over and clipped me and had me up on two wheels. I watched and seen the other one coming. I thought, 'My God, he won't stop, he will never see us.' He ran on up just like you would run into a dark room and run into a table." As to the fog, he testified: "The fog was a heavy one and you couldn't see anything. When I first got into it it was a little thick, and I said to myself, 'Get off the highway and play safe', and I did. When you hit the thin fog you could see the wall of the thick fog in front of you. There is always a good little mist before the heavy one. The little mist ain't very far away from the big one. I knew where I was, and I always used caution. The fog at Norco when you get into it lies there like a thin coat of ice and the only way you can run through it is to stick your head out of the window."

thick fog was like a wall in front of them. All agreed that in driving through the fog without coming to a stop or slowing down so they could stop immediately, they were taking a chance. All agreed that in the thick fog the person turning off the highway onto the shoulder could not see obstructions there. All agreed that Slade did not see the truck and ran into it at a speed estimated by Greer at 20 and by Arnold at 10 miles per hour. The undisputed evidence as to the force of the collision, and the photographs showing the condition of the trucks after the collision, established that heavily loaded as it was, a combination tractor and semi-trailer, the tractor weighing 5400 pounds, the trailer weighing 7200 pounds and carrying a 9000 pound load, and therefore much more difficult to stop than an empty truck, Slade's truck was running much too fast for safety. Notwithstanding these undisputed facts, the district judge, instructing a verdict for defendant on the nuisance count, denied its motion to instruct for it on the negligence count. There was a verdict on this count for plaintiff for $35,000, a credit on it of $3300 received as workmen's compensation, and a requirement by the judge that plaintiff remit another $3,000.

Defendant has appealed, assigning numerous errors: that a verdict should have been instructed for it because (1) the evidence failed to show defendant was guilty of negligence proximately causing the injury and (2) that it showed contributory negligence as a matter of law; that the verdict was so large in amount as to evidence passion and prejudice; and that the court had erred in the admission and rejection of evidence and in giving and refusing instructions.

Here, not waiving any of its points, appellant vigorously urges upon us (1) that the fog was not due to any negligence of defendant, but if it was, the fog was merely a condition and not a proximate cause of the collision, and (2) the deceased was himself guilty of contributory negligence.

Since we are quite certain that but for Slade's contributory negligence, the injury would not have occurred and that defendant should, therefore, have had an instructed verdict on this ground, we find it unnecessary to consider the other points appellant urges upon us. It is settled law in Louisiana that one entering a fog, such as the one pleaded and testified to here, must stop until sure of his way, or if he drives into it, he must proceed at such a speed as that he can stop the car in the distance within which he can see objects in his way. It will not do for such a one to say, as here, that he was driving 20, 15 or even 10 miles an hour. The evidence establishes that in the fog he did not see and could not see the object he ran into within the distance within which he could stop his truck, but more than that, it shows that, fully warned by the fog in the road, by Greer's blinking his lights at him and by Greer's disappearance in the fog, he took the hazardous course not of turning off onto the shoulder to stop, but of trying to drive around the cars in the road by using the shoulder when in the fog there was no way by which he could determine whether other cars were parked there or whether there were other obstructions in his way. That Slade drove into a dense fog where he could not see his way and was the author of his own death, both the pleadings and the evidence leave in no doubt. Plaintiffs pleaded that "the vision of said Slade was wholly obscured on said occasion by said dense and heavy fog and cloud, and in such fog or cloud he was unable to turn the truck toward his right or left and avoid running into the overturned truck, and was unable to stop the truck in sufficient time to avoid a collision and head on crash with the overturned truck." The evidence establishes that this was so. Under these undisputed facts it will not do for plaintiffs to plead and claim that in driving as he did, Slade was in the exercise of due care. For it is settled by a long line of Louisiana cases[2] that he was guilty of contributory

2 O'Rourke v. McConaughey, La.App., 157 So. 598; Dominick v. Haynes Bros., 13 La.App. 434, 127 So. 31; In Castille v. Richards, 157 La. 274, 102 So. 398, the court held that where two automobiles were coming into a cloud of dust it was inexcusable negligence for the drivers of the automobiles not to have come to a full stop until the dust had subsided. In Raziano v. Trauth, 15 La.App. 650, 131 So. 212, 213, the Court said: "The fact that he did not see the truck until so close upon it cannot excuse him, for he must be held to have seen what he should have seen * * * and, if the fog affected his vision, he should not have maintained a speed of 20 miles an hour." Rector v. Allied Van Lines, La.App., 198 So. 516, holds flatly that the presence of smoke or dust on the road is not the proximate cause of an injury if such fog covered

negligence as a matter of law and may not recover for injuries resulting therefrom. Appellees'[3] insistence, with citation of cases,[3] none, however, from Louisiana, to the effect that it is negligence to envelope a highway with fog or smoke caused by the starting of negligent fires or the sudden eruction of steam, cinders or dust, and that one injured by that negligence concurring with the negligence of another may recover, will not avail them here. For in none of those cases, as here, was there contributory negligence completely barring recovery. Nor may appellees rely, as they seek to do, upon the doctrine of sudden emergency both because the evidence establishes without dispute that the deceased had full warning of the dangers in ample time to provide against them and because the defense of sudden emergency is never available where that emergency is the result of the claim-. ant's previous contributory negligence.[4] Slade had had long experience as a truck driver, more than half of it in driving over this identical route. He knew the I. C. C. Safety Rules for Motor Carriers, and particularly rule 231, providing: "Extreme caution in the operation of motor vehicles shall be exercised under hazardous conditions such as snow, ice, sleet, fog, mist, rain, dust, smoke or any other condition which adversely affects visibility or traction, and speed shall be reduced accordingly." Slade was not only warned by his own vision of the fog, but by Greer who turned his lights on and blinked them to indicate to Slade that there was danger ahead, and he also saw Greer enter and disappear in the fog. What is said in Lapeze v. O'Keefe, La.App., 158 So. 36, 37, is particularly apposite here: "The evidence shows that, just prior to entering the fog bank in which the accident occurred, he had passed through several small drifts, emerging therefrom almost as soon as he entered, and that he thought they were all of the same character. He had no reason to anticipate this. Instead of being lulled by these signals, they ought to have served as ample warning of greater danger ahead." Cf. Inman v. Silver Fleet and Rector v. Allied Van Lines, note 2, supra. In Campbell v. Texas & P. R. Co., La.App. 182 So. 339, the court said it did not find it necessary to determine whether the railway company was negligent in causing a dense smoke to envelope the highway for the contributory negligence of the plaintiff in driving into the smoke was the cause of the accident. Other cases in point are Illinois Central Railroad Co. v. Oswald, 338 Ill. 270, 170 N.E. 247; Anderson v. Byrd, 133 Neb. 483, 275 N.W. 825; Mitsuda v. Isbell, et al., 71 Cal.App. 221, 234 P. 928, and Domite v. Thompson, La.App., 9 So.2d 55, where the physical facts, as here, compelled the conclusion that the truck was being driven beyond safe speed.

the highway, but the failure to exercise care in driving into the fog is. Other cases in point are Maggio v. M. F. Bradford Motor Exp., La.App., 171 So. 859; Inman v. Silver Fleet, La.App., 175 So. 436; Hutchinson v. T. L. James & Co., La.App., 160 So. 447; Penton v. Sears, Roebuck & Co., La.App., 4 So.2d 547; and Russo v. Aucoin, La.App., 7 So.2d 744. This court has uniformly taken the same view, Smith v. Southern Railway Co., 5 Cir., 53 F.2d 186; Brown v. Southern Railway, 5 Cir., 61 F.2d 399. Cf. Thompson v. City of Houma, 5 Cir., 76 F.2d 793; C. C. Moore v. Hayes, 5 Cir., 119 F.2d 742.

3 Keith v. Yazoo & M. V. R. Co., 168 Miss. 519, 151 So. 916; Southern Cotton Oil Co. v. Wallace, 27 Ga.App. 415, 108 S.E. 624; McCombs v. Southern Railway Co., 39 Ga.App. 716, 148 S.E. 407; Farrer v. Southern Railway Co., 45 Ga.App. 84, 163 S.E. 237; Ryan v. First National Bank & Trust Co., 236 Wis. 226, 294 N.W. 832; Pisarki v. Wisconsin Tunnel & Const. Co., 174 Wis. 377, 183 N.W. 164; Pitcairn et al. v. Whiteside, Ind.App., 34 N.E.2d 943.

4 Walker v. Southern Advance Bag & Paper Co., La.App., 150 So. 865; Myers v. Sanders, 189 Miss. 198, 194 So. 300; Harper v. Holmes, La.App., 189 So. 463; Prevost v. Smith, La.App., 197 So. 905; all holding that the plea of sudden emergency may be availed of only when he who pleads it is himself free from fault and has not contributed to the creation of the emergency. In Pendola v. State, La.App., 4 So.2d 28, the court, denying the application of the rule, said that if any emergency arose it was one created by the driver's failure to properly act in time to control his car, while in Meaux v. Gulf Ins. Co., La.App., 182 So. 158, 161, the court said: "Under the well recognized rule that the driver of an automobile should always have his car under such control, when driving with his headlights on, so as to stop it within the distance which his lights project in front of him, the defendant Patin is bound to be held negligent in this case."

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

HOLMES, Circuit Judge (dissenting).

I cannot concur in the majority opinion in this case without consciously invading the province of the jury. This is true because I think there was substantial evidence to support the verdict and all the findings of fact implicit therein.

The issue as to contributory negligence depends upon direct and circumstantial evidence. The direct evidence consists of the testimony of two eye witnesses, one of whom said that Slade was driving not more than ten miles per hour, the other twenty miles, when he met his death.

Under the evidence, different inferences might be drawn by fair and reasonable men as to the density of this fog and as to whether it was negligent to move within it at a speed not exceeding ten miles per hour. The district court did not err in refusing to decide, as a matter of law, that Slade was negligent in proceeding into a thin fog that suddenly became dense after he had traveled a short distance.