The defendants in this case are appealing from a judgment rendered against them, in solido, in favor of the plaintiff for the sum of $1,333. The demand is one for personal injuries and incidental expenses arising from an accident which took place on December 22, 1941. Originally it was for the sum of $14,780.
The defendant, Ellis Lalanne, was an employee of his co-defendant, Joe Elder, who did business under the name of Port Barre Lumber Yard in the Parish of St. Landry. Lalanne, besides rendering other services for his employer, drove trucks loaded with lumber and it was on a trip conveying a load of lumber from Port Barre to the airfield near the city of Lake Charles that this accident happened near 5 o'clock on the morning of December 22, 1941.
The plaintiff, Doris Mae Coffey, is a young woman, twenty five years old at the time of the accident, who was engaged as a waitress in a cafe in Lake Charles. On the evening before the accident she and the owner and driver of the car in which she was riding, Emory W. Chaffee, together with another couple, had left Lake Charles to go out for a drive to Jennings and Crowley, and after taking the other *Page 615 
members of the party to their homes, were on their way into the city of Lake Charles when the car ran into the rear end of the truck in charge of Lalanne, which was parked on the highway about three blocks east of the entrance to the airfield and about three miles in that direction from Lake Charles.
In her petition plaintiff alleges that she was riding in Chaffee's car as an invited guest, and as already indicated, they were going west on Highway 90 towards the city of Lake Charles at about 5 o'clock in the morning of December 22, 1941. That it had been raining for some time but at the hour of the accident the rain had slackened a great deal. That as the automobile reached the point near where the truck was parked on the highway, there was a car coming from the west, the headlights of which momentarily blinded the driver of their car and that he was unable to see the lumber truck which was stopped immediately ahead of him, in time to avoid running into it. She charges the driver of the truck with negligence which was the entire and proximate cause of the accident and her resulting injuries in the following particulars: (1) In parking the truck entirely on the highway in violation of the State Highway Regulatory Act, especially Act No. 286 of 1938; (2) in failing to have lights on the parked truck so as to create some sort of warning to on-coming traffic; (3) in leaving the truck parked in a stationary position on the highway as a menace to traffic, especially in view of the weather conditions prevailing at the time; (4) in failing to set out flares in accordance with the law of this State particularly Act No. 164 of 1936; (5) in failing to have available flares at the time of the accident or to have such flares as would serve the purpose of the flare law; (6) in failing to give some other adequate warning to on-coming traffic of the presence of the truck on the highway and (7) in failing to obtain before hand some other equipment which might serve the same purpose as the flares, in view of the bad weather conditions prevailing at the time.
She then sets out the injuries which she sustained and which consisted principally of a deep incise wound at the hair line over her right eye about one and one-half inches long; also another "Y" shaped wound around the eye involving the lids. Further she alleges that she received three smaller incise wounds about one-half inches in length on the right side of her neck and two lacerations about one and one-half inches in length over the knee cap of her right leg. In addition to this she sustained several abrasions and brush burns on her nose, chin, and the right side of her face and contusions to her left knee and both hands.
The defendants admitted that the defendant driver of the truck was employed by the defendant, Elder, and also that at the time of the accident he was acting within the course and scope of his employment. They admitted the happening of the accident but denied the negligence that is charged against the defendant Lalanne.
Setting out their version of what happened they allege that on the morning of the accident it had been raining hard for a long time and that dampness from the rain finally affected the running of the motor of the truck causing the driver to bring it to a stop on the right shoulder of the highway. That he attempted to drive it altogether off the paved portion of the highway but before he could do so the motor stopped and he was unable to get the rear portion of the trailer completely off.
They aver that the truck was equipped with flares and as soon as the driver realized that he was stalled, he tried to station the flares on the highway in accordance with the flare law but before he could do anything in that direction he observed the approach of the automobile plaintiff was in, coming behind him from the east. That although the taillights and the clearance lights on the truck were burning brightly, as an extra precaution because of poor visibility, he stood near the rear of the truck waving a lighted flashlight in the direction from which the automobile was coming in an effort to warn the occupants of the presence of the truck on the highway. In spite of all this however the car crashed into the rear end of the truck without slowing up.
They aver that the accident was due to the fact that the automobile was being driven at an excessive speed in the rain and darkness, on a highway which is heavily traveled, and to the fact that the driver of the car and the plaintiff were not keeping a proper lookout ahead of them. In the alternative they allege that if it should be held that the driver of the truck was guilty of any negligence which may have been the proximate cause of the accident, that plaintiff cannot recover because she was guilty of contributory negligence which was also a proximate cause. That she was *Page 616 
familiar with the locality and should have realized that the automobile in which she was riding was being driven at an excessive and dangerous speed because of the heavy traffic on the highway and the poor visibility due to the bad weather and she did not protest in any manner. That it was her duty to keep a sharp lookout for objects on or near the road ahead of her so that she could warn the driver if he did not see them but as she was not keeping a proper lookout she did not see the lights on the truck or on the trailer, nor the flashlight being waved by the driver, or if she did see them she failed to call the attention of the driver of the car to them.
We are confronted with three propositions in the case: (1) Was the driver of the truck himself guilty of any negligence at all under the circumstances growing out of the existing facts? (2) If he was guilty of negligence was the driver of the car guilty of negligence which may be said to have been a proximate cause of the accident? and (3) If the driver of the car was guilty of such negligence was the plaintiff herself guilty of negligence which may itself have independently contributed to and can be said to be a proximate cause of the accident? The trial judge filed written reasons for judgment in which he held the driver of the truck guilty of negligence principally on the ground that he did not have his truck equipped with flares that would light and also because he never attempted to light whatever flares he did have from the time the truck came to a stop until the happening of the accident. He did not comment on the question of the negligence of the driver of the automobile although he stated that there was nothing in the record that would indicate any independent contributory negligence on the part of the plaintiff, or anything that would warrant imputing any assumed negligence on the part of the driver of the car to her.
Stated as briefly as possible, the facts of the case are substantially as follows: At about 3 o'clock on the morning of the accident, Lalanne left Port Barre with a load of lumber on his truck and trailer in very bad weather. It seemed to have rained very hard during the whole course of his trip as far as the village of Iowa, a few miles cast of Lake Charles. There the motor of the truck began to sputter and he thought it prudent to stop. He parked in front of a cafe and remained there as long as ten minutes. He was being followed by another truck belonging to his employer, a smaller and lighter model, also loaded with lumber and being driven by a man named Guillory. After starting his truck at Iowa, he continued on his run into Lake Charles and on reaching a point a few blocks east of the entrance to the airport where he was to deliver his load of lumber, he noticed that his motor began to sputter again. It was then about 5 o'clock in the morning and still very dark although the rain had slackened to a considerable extent. Instead of pulling his truck on the side of the road onto the shoulder where he had ample place to park in case the motor stopped, he tried to keep it going by manipulating the self-starter, but did not succeed. The motor then went dead and before he was able to pull the truck off the paved slab, the truck itself stopped with the greater portion of the truck parked at an angle upon the shoulder and a part of the trailer remaining also at an angle on the north lane of travel of the paved slab, the rear portion occupying from four to five feet of the surface of that lane. Aware that Guillory was closely following him, Lalanne waited for him to pass by him intending, as he says, to have him tow the disabled truck from where it was parked into the airfield. As a matter of fact as Guillory passed he told him to pull ahead and then back and hook him up to his truck.
What happened after that during an interval of about five minutes, as close as we would judge, is not very clear. The defendants contend that Lalanne lost no time in preparing to get out and place his flares whereas the plaintiff contends that he lost some time trying to get his motor started again. This contention is based on the statement Lalanne is said to have made that after getting out of the truck he tried to start and went and got his "plyers." They assumed that if he got his pliers it was to try to remedy the trouble with the motor. Defendants' counsel contend very strenuously that there was an error made in the use of the word "plyers" as found in the record, and considering all of Lalanne's testimony that what he said was that he went to get his "flares." Whether there was a mistake made by the Court reporter, we consider the matter immaterial as it is a fact that this truck had been stalled for as long as five minutes before anything was done by the driver to get out his flares and even after he did get them out, it turned out that they would not have *Page 617 
been very useful because they were water-soaked from the careless manner in which they were kept on the truck.
There was then a violation of the flare law either in respect to having the flares properly protected from the rain or else in the delay in trying to get them out and placed on the highway. This Court more or less committed itself in the case of Bourgeois v. Longman, 199 So. 142, to the rule announced in Beach v. Union Brewing Corp., La. App., 187 So. 332, that it takes anywhere from three to five minutes to set out flares in order to comply with the flare law of the State. That of course is assuming that the truck is equipped with flares in good condition and that the driver sets about at once in getting them out and placing them on the highway as they should be. In this case, the testimony does not satisfy us that the driver started as soon as he should have as it seems to be borne out by a preponderance of the testimony that it was at least five minutes from the time the truck stopped until the accident occurred.
[1] Therefore in respect to the failure of the driver to have complied with the law we believe that the trial judge was correct in finding him negligent and that his negligence in that respect was a proximate cause of the accident.
But counsel contend that when the driver saw that his flares would not be effective he took his flashlight and stationed himself at the rear of the truck waving it as a warning of the presence of the truck on the paved portion of the highway. Here again however the testimony reveals that the flashlight was not much more effective than the flares would have been because it is admitted that the flashlight had no lens and that the battery must have been very weak as the light which was projected was a very dim one.
[2] So in our opinion, this substitute which was offered for the flares cannot be said to have been any better than the flares themselves would have been and the only remaining signal which remained was the glare from the clearance lights on the truck and the trailer and also the taillights on the rear end of the trailer itself.
We find a preponderance of testimony to the effect that these clearance and taillights were showing at the time and whilst it may be that because of the angle at which the truck and trailer were parked on the highway, it was not possible for the driver of the car to see the clearance lights, it looks as though he should have seen the taillights on the trailer unless it be that he was momentarily blinded by the lights of a car approaching from the west about which both he and the plaintiff testified.
[3] The testimony about that car is not contradicted by any one and we might well assume that the driver of the automobile was blinded by its lights. In that event however, he was confronted with the rule to the effect that he should have had his car under such control as to be able to stop within range of his own headlights.
[4] We believe therefore that the facts, as we find them, support the conclusion that the driver of the car was guilty of such contributory negligence as may be said to have been a proximate cause of the accident and we are next led to inquire into the matter of the plaintiff's own contributory negligence.
[5, 6] On this point we are satisfied that no such negligence appears. The suggestion that these people had been on an all-night party and very probably indulging in intoxicating liquor has no testimony in fact upon which to rest. Chaffee is shown to have taken only two drinks earlier in the night and the proof is that the plaintiff herself did not drink any at all. She testified that she was wide awake and alert at the time of the accident and even though the weather at that moment was not any too good still the rain had slackened and there seemed to be no reason why she should have been on any more than the usual lookout than is required of the ordinary guest in an automobile. It is not shown that the car was being driven at a speed of more than 35 to 40 miles and whilst it is true that she had equal opportunity as the driver of seeing danger on the highway by reason of the presence of the truck, still under the rule that a guest has the right to rely to a reasonable extent upon the prudence and care of the driver of the car, she had no reason to anticipate any emergency calling upon her to protest. Delaune v. Breaux, 174 La. 43,139 So. 753. If the driver of the car was dazed by the glaring headlights of the approaching car, that is something which she could not foresee. Therefore even though Chaffee was guilty of contributory negligence, his negligence cannot be imputed to the plaintiff and she consequently can recover against the defendants because of the *Page 618 
negligence of the driver of the truck which itself was a proximate cause of the accident.
Counsel for defendants rely strongly on the decision of this Court in the case of McCook v. Rebecca-Fabacher, Inc.,10 So.2d 512, 516. On reading that case again however we find many features which distinguish it from this case. Counsel compare the situation confronting the driver of the truck with the situation which faced the driver of the truck in that case, claiming that the motor of the truck in that case also sputtered for a good while before it finally came to a stop and the driver kept on the traveled portion of the highway hoping that the motor would adjust itself. In that case however that was the first trouble the driver had experienced with the motor on account of the rain-fall, whereas in the present case the driver had had trouble not so very long before the accident and had had to stop his truck. In the McCook case the evidence showed besides that the shoulder on the right side of the driver was too narrow for him to park there and that he could not drive over to the left side shoulder because of the traffic which was coming from the opposite direction. In this case it is shown that the driver had a very wide gravelled shoulder on which he could have parked and apparently at the time he was having trouble with the motor there was no traffic coming against him to keep him from driving on the left-hand side of the highway should he have had a better place to stop there.
In the McCook case we were not entirely satisfied with the lack of negligence on the part of the truck driver for undoubtedly the plaintiff was denied recovery on the ground of the negligence of the driver of the car which he was in, which negligence we held was imputable to him. It is stated in the opinion that "even though the driver of the defendant truck was guilty of some negligence" we were satisfied that the driver of the car that ran into the truck was equally as guilty and that his negligence was imputable to the plaintiff.
The district judge in this case stated that in reaching his conclusion he was guided particularly by the cases of Tooke v. Muslow Oil Co., La. App., 183 So. 97; Fields v. Owens, La. App., 186 So. 849; Roberson v. Rodriguez, La. App., 186 So. 853; Millet v. Rizzo, La. App., 2 So.2d 244 and Bates v. Hayden, National Cas. Co., La. App., 188 So. 751. Whilst, as is generally the rule, all these cases can be differentiated the one from the other on certain points, there are nevertheless some features in some of them which tend to support the conclusions reached by the trial judge.
[7] On the question of quantum we find no reason to disturb the amount of the award made in the judgment appealed from. The plaintiff sustained rather serious and painful injuries which kept her confined indoors for three weeks after which, because of the injury to her knee, she had to use crutches and could not go to work for several months.
The amount awarded included the loss of wages during this time as well as the sum of $83 for doctor and medical expenses, and as a whole we think that it is very fair and reasonable.
Judgment affirmed.