**CAR & GENERAL INS. CORPORATION, Limited, v. CHESHIRE et al.**

**SAME v. COLCLASURE et al.**

**SAME v. STANFIELD et al.**
**No. 11769.**

Circuit Court of Appeals, Fifth Circuit.
Feb. 27, 1947,

Rehearing Denied March 26, 1947.

See also 4 F.R.D. 353.

E. Wayles Browne, of Shreveport, La., and William A. Porteous, Jr., of New Orleans, La., for appellant.

A. S. Drew and John T. Campbell, both of Minden, La., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

On the night of September 6, 1944, William Colclasure, a boy nineteen years of age, was driving his family's automobile along U. S. Highway No. 80, a two-lane paved highway, in Webster Parish, Louisiana. Riding with him as his invited guests were James Lee Cheshire and Billy Jack Stanfield, both sixteen years of age. About nine o'clock that night the automobile collided with a large gasoline transport truck which had stopped and was blocking the highway, and the three boys were killed. Actions were brought by the parents of each of the boys to recover damages for their wrongful deaths. On motion the actions were consolidated and tried together before a jury. Verdict was for the plaintiffs, and from the judgments entered thereon the defendant insurance carrier has appealed.

The truck with which the Colclasure automobile collided was a large gasoline transport truck consisting of a large tank-trailer which was towed by a tractor unit. The tank-trailer was loaded with 4,000 gallons of gasoline. The tank-trailer was dark green in color and the overall length of the tractor and trailer was twenty-six feet and the weight was 39,000 pounds.

The driver of the gasoline transport truck was William Dave Knight, a man about forty-one years of age. Knight had never before driven a truck of this type although it is without dispute that such a trailer-tractor unit is a complicated mechanism which should be operated by one who possesses skill and experience. Knight had only been given instructions in driving the unit for a short period prior to his being entrusted to drive it on this first trip.

In the night time as the truck moved along the highway toward the village of McIntyre, it began the ascent of an incline. As the unit neared the crest of the incline, the motor began to stall and the driver undertook to change from third to second gear. In effecting the change of gears the truck stopped. After the gears had been changed, the driver applied the power and an axle broke. The motor was cut off and the vacuum brakes were ineffective. The truck then rolled back down the incline, and because it was improperly steered by the inexperienced driver, the tank-trailer jackknifed across the north lane of the highway at about a forty-five degree angle, completely blocking all but about three feet of the paved portion of the road. The tractor part of the unit remained in the south lane of the highway on its proper side of the road with its headlights shining east up the highway. The trailer unit was equipped with lights, but there is a dispute in the

evidence as to whether they were lighted; the preponderance of the evidence being that they were not on and that the tank-trailer remained unlighted as it stood blocking the lane of the road in which the Colclasure automobile was approaching,

There is evidence that shortly after the gasoline transport truck came to rest on the highway, an approaching truck passed around the truck and trailer by driving onto the shoulder of the road. The driver of that truck testified that he had quickly swerved his truck just in time to avoid the tank unit which suddenly loomed up in front of him on his side of the road; that when he first saw the stalled truck he thought it was an automobile parked on its right side of the road; and that he did not discover the tank-trailer across his path until he was almost upon it and from twenty to sixty feet away.

The place where the gasoline transport truck came to rest was two hundred feet from the crest of the incline, and cars coming over the hill would be within the two hundred feet before drivers would be able to see it. With the tractor lights on and shining up the road toward oncoming traffic, it appeared to approaching drivers that an automobile was stopped on its proper side of the highway and they could not see the unlighted trailer across their lane until they were almost upon it.

The gasoline transport truck was equipped with flares, but the inexperienced driver did not make any attempt to place flares in the road to warn approaching drivers of the death trap on the highway. Indeed, the driver did not know the truck was equipped with flares.

The disabled truck and trailer had been at rest in the highway for fifteen minutes before the approaching Colclasure automobile came over the crest of the hill. Knight, the only living eyewitness, said that he stood in the highway one or two feet in front of his truck and tried to warn the boys in the oncoming car by waving his arms and shouting. He testified that the automobile approached at a speed of from fifty to fifty-five miles per hour. If his evidence as to speed is given credence, the time elapsing after the automobile came over the hill was less than two seconds in which he could wave and shout warnings.

 The physical facts, when carefully considered in the light of the record evidence, unerringly point to the negligence of the appellant's assured as the proximate cause of the accident. When the truck broke down in the hands of a wholly inexperienced driver, he was unable to back it to a place of safety, but left it resting on the highway with the tractor lights burning and the unlighted trailer blocking the other lane of the highway. The tractor being on its proper side of the road with its lights shining deceived approaching drivers who did not, and could not, observe the unlighted trailer until they were almost upon it. Leaving this large and deceptive obstruction on the highway without flares as required by law was, to say the least, the grossest kind of negligence and a violation of the highway laws of Louisiana. Act 286 of 1938, Sec. 3, Rule 15; Act 164 of 1936 as amended by Act 215 of 1942; Coffey v. Lalanne, La.App., 20 So.2d 614, 617.

Appellant may not escape liability for its negligence by relying upon the general rule that drivers of automobiles must keep their vehicles under such control as to be able to bring them to a complete stop "within the distance in which headlights project." Goodwin v. Theriot, La.App., 165 So. 342, 344; Harper v. Holmes, La.App. 189 So. 463. The Louisiana courts have made it clear that the general rules regarding a driver's duty to be able to stop within the distance of his lights and his obligation to reduce speed and stop if "blinded by lights of another car or by dust, smoke, etc.," are not hard and fast rules which will operate to defeat recovery in every case in which a motorist collides with a stationary object in the highway. In Louisiana motorists have the "right to presume and act upon presumption that the way is safe for ordinary travel, even at night." This is particularly true where a deceptive obstruction has been negligently placed in his way. Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1; Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253. Cf.

Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148, 149(6), 151. In each case the particular facts and circumstances must be considered and, "in the final analysis, the facts of each case will determine the question of negligence." Herring v. Holicer Gas Co., La.App., 22 So.2d 868, 871; Woodley & Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469.

 Neither may appellant escape liability for the negligence of its assured by pointing out that another vehicle did discover the deceptive obstruction in the road in time to drive off the road and go around it. In circumstances of sudden peril, two drivers may not act alike in facing an emergency. The law does not require that all people act alike in situations of sudden peril; all that is required is that a person make a choice or take such action "as a person of ordinary prudence placed in such a position might make." 5 Am.Jur., Automobiles, § 171; Blashfield's Cyclopedia of Automobile Law, § 668; Stafford v. Nelson Bros., 130 So. 234.

 It was open to the jury to find from the evidence that William Colclasure did not have a clear view ahead of him for two hundred feet when he came over the crest of the hill; that the bright lights of the stalled truck, shining out on the proper side of the road, created a deception which prevented him from observing the unlighted tank-trailer which rested across his lane of the highway; and that he was confronted with sudden peril from which he was unable to escape.

It becomes patent that the many cases cited by appellant are not decisive of this case. Cf. Goodwin v. Theriot, La.App., 165 So. 342; Inman v. Silver Fleet, La. App., 175 So. 436; Thompson v. City of Houma, 5 Cir., 76 F.2d 793; Safety Tire Service v. Murov, 19 La.App. 663, 140 So. 879; Mickens v. F. Strauss & Son, La.App., 28 So.2d 84. This case, resting upon its particular facts and circumstances, is one warranting recovery. Herring v. Holicer Gas Co., La.App., 22 So.2d 868; Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1; Hanno Motor Freight Lines, 17 La.App. 62, 134 So. 317.

There is no merit in the contention that the court erred in failing to give charges requested by the defendant. The charge of the court was full and fair. Moreover, on request, the court recalled the jury and gave each and every relevant and proper charge requested.

 The court did not commit error in refusing to submit to the jury seventeen interrogatories requested by defendant. Rule 49 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, providing for the submission of interrogatories is permissive, not mandatory. It was within the sound discretion of the trial judge as to whether he would submit the issues on interrogatories or leave it to the jury to return a general verdict. Home Ins. Co. v. Tydal Co., 5 Cir., 152 F.2d 309, 311.

A careful review of the record evidence and the authorities leaves no doubt but that the law and the great preponderance of the evidence establishes that the negligence of the appellant's assured was the proximate cause of the collision and the death of the three boys, and that this negligence did not at any time abate up to and until the collision.

We find no reversible error in the record. The judgments are affirmed.