This is a suit for $19,046.83 damages which plaintiffs alleged to be due as a result of an automobile accident on the road four and one-half miles south of Leesville, Louisiana on October 4, 1945. The petition alleged that the driver of defendant's truck made, without warning, a sudden and abrupt left turn in an attempt to leave the highway and get on a side road. At that moment plaintiffs were in the process of going around and passing defendant's truck and when the sudden left turn was made, the left front wheel, bumper and fender of defendant's truck struck the entire right side of plaintiffs' car, knocking same a distance of fifty feet and turning it bottom side upward.
The defendants, Mansfield Lumber Company, Inc. and its insurer, filed a joint answer in which the insurance coverage was admitted. It was also admitted that defendant, Mansfield Lumber Company, Inc., was the owner of the truck involved in the accident and that its driver was the agent of the Mansfield Lumber Company, Inc., as alleged and that he was at the time acting in the course of his employment. The answer further set forth that the defendant's truck, just prior to the accident, was proceeding along the highway in a careful and cautious manner at a speed of not over fifteen miles per hour; that the driver made a proper signal for the left turn in ample time to assure the safety of approaching vehicles; that he looked in the rear view mirror and saw plaintiffs' car approaching, and knew that he had sufficient time in which to make the left turn, on the assumption that plaintiffs' car was traveling at a lawful rate of speed. The answer charged that the accident resulted solely from the negligence of Anthony C. Cassar in traveling at an excessive rate of speed, in failing to maintain a proper lookout, in not having his car under control; in failing to observe the left turn signal of the truck driver; in failing to sound his horn in time and in failing to timely apply his brakes. In the alternative, and in the event the Court should hold the driver of the truck to be negligent, the defendants pleaded that the above listed acts of Anthony C. Cassar constituted contributory negligence barring his recovery and that the other plaintiff, Mrs. Helen Cassar, was guilty of contributory negligence in acquiescing in her husband's negligent operation of the car, in failing to maintain a proper lookout and in failing to give timely warning of the imminent danger which she either saw or should have seen.
The case was tried before Honorable Hal A. Burgess, who served as one of the presiding judges of the Eleventh Judicial District Court until the time of his death, which occurred shortly after the trial of this case and before a decision had been handed down. The case was then argued before Honorable Edwin M. Fraser, who rendered judgment in favor of plaintiffs for a total of $6,546.83. The defendants appealed.
The plaintiffs answered the appeal, praying that the judgment be amended by increasing the award to plaintiff, Mrs. Helen Cassar, by $5,000, and, as amended, affirmed.
Plaintiffs, Anthony C. Cassar and Helen Bordieri Cassar, were married in New York City on September 15, 1945. Using Mr. Cassar's 1945 Plymouth Sedan, they visited the West Coast, and then proceeded to Camp Polk, Louisiana to visit Mrs. Cassar's brother. On the morning of October 4, 1945, Mr. and Mrs. Cassar were proceeding north from Camp Polk with Mrs. Cassar's brother and a lady friend of his as passengers in the back seat. On that day defendant's driver had been dispatched with a light load of building materials to a building under construction on a graveled public road joining the paved highway #171 at a point 3 1/2 miles south of Leesville, Louisiana. The road turned west from this paved highway and defendant's driver, traveling south, should have made a right turn when he reached the graveled road, but he passed the turn, and, after realizing he had gone too far, turned around near the entrance to *Page 799 
Camp Polk and proceeded north. The Cassar car was proceeding north behind this truck, and the collision occurred on the paved highway as Cassar was attempting to pass the truck on its left at the time that Blanchard, driver of the truck, was making his left turn into the graveled road.
Defendants cite pertinent paragraphs of Rules 7 and 8 of Section 3 of Act 286 of 1938, with emphasis on paragraph (c) of Rule 7 which provides that the driver of a vehicle shall not drive to the left side of the center line in overtaking and passing another vehicle traveling the same direction unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety and providing that whenever an accident occurs under suchcircumstances, responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking and passing.
Plaintiffs' main contention is that the truck driver made the left turn after seeing the approaching car in his rear view mirror and when he should have known that such turn could not be made in safety.
[1] Blanchard, driver of defendant's truck, testified that before beginning his left turn he looked into his rear view mirror and saw the Cassar car approaching and also heard the horn blow. The Court requestioned him on this point:
"By the Court: You state that you had seen him through your mirror and thereafter you heard him blow his horn? A. That's right.
"Q. Did you ever make any effort to look where he was when he blew his horn? A. No, sir.
"Q. You never looked back after you heard him blow his horn? A. No, sir."
Defendants' counsel on re-direct examination questioned Blanchard as to whether he had started the turn when he first heard the horn blow:
"Q. When you first heard the horn blow had you started making the turn? A. Just fixing to make my turn when I heard the horn."
It is not clear to us just what distance Cassar was from the defendant's truck at the time he sounded his horn. However, this distance loses some of its controlling weight in view of Blanchard's testimony that he observed plaintiffs' approaching car when he glanced into the rear view mirror prior to beginning his left turn. After observing the approach of plaintiffs' car, he should have known that his own left turn could not be made in safety. Hence, we conclude that defendant's driver was negligent. Paragraph (a) Rule 10, Section 3 of Act 286 of 1938.
[2] We consider the requirement of paragraph (a), Rule 10, namely, that before turning from a direct line a driver"shall first see that such movement can be made in safety" to be the more important portion of that rule, and that the further requirement that appropriate hand signal shall be given "whenever the operation of any other vehicle may be affected by such movement" is an additional and not an alternative requirement and when a driver makes a left turn under circumstances that the movement cannot normally be made in safety, it is not a valid excuse that he gave the appropriate hand signal before making the obviously unsafe movement.
[3] The contributory negligence charged against Cassar is that he operated his car at an excessive rate of speed, driving same on the left side of the road without a timely signal of his intention to pass; that he failed to apply his brakes and keep his car under control.
Mr. Cassar's brother-in-law testified that the truck ahead was moving very slowly when it began to make the left turn. Mr. Cassar's wife testified that when she first saw the truck, it was on the shoulder. Presumably, this was the right shoulder that he had pulled over on preparatory to making the left turn. Mr. Cassar testified that his car (which was traveling north) was on the east side of the center line when struck by the truck, which indicates that he was not giving way as far as he could have to the left in order to avoid striking the truck. It is true that Mr. Cassar blew his horn before the actual impact. The fact *Page 800 
that he gave audible warning of his presence does not excuse him from his other acts of negligence in not timely slowing down his car and bringing same under control.
The case of Burns v. Evans Cooperage Co., La. App.,17 So.2d 743, presented a collision situation somewhat similar to the one before us. There the Court held that even if a truck driver negligently makes an abrupt left turn, a following motorist who was far enough to the rear to have avoided the mishap had he been traveling at a reasonable rate of speed was guilty of contributory negligence barring recovery.
[4] The record establishes that Mr. Cassar was operatiing his car at a speed too high under the circumstances. He should have brought his car under control earlier than he did. We therefore hold that he was guilty of contributory negligence barring his own recovery of damages.
[5-7] Defendants have pleaded as a bar to recovery by plaintiff, Mrs. Cassar, her contributory negligence in failing to observe the dangerous situation and to warn her husband of the imminent danger. Having found as a fact that the driver of the automobile was guilty of contributory negligence, we now consider whether the passenger in the vehicle — who is under a lesser responsibility for observing; the road ahead, etc. — was also guilty of contributory negligence in failing to warn the driver.
The duty of a guest in an automobile to act in the avoidance of accidents is primarily that of warning the driver of the existence or sudden appearance of unexpected obstacles and hazards. It is not incumbent upon the guest to suggest a slowing; down each time the host driver overtakes a vehicle, or generally to indulge in "back seat driving." It is not expected that the guest will continually endeavor to sub-statute his own judgment for that of the driver in matters of routine operation of the car. In the case before us, we do not find that the situation was obviously an emergency one for a sufficient length of time before the collision to impose upon Mrs. Cassar the duty of giving warning to the driver. As a guest in the car, she had the right to rely to a reasonable extent on the care and proper management of the car by the driver. Delaune v. Breaux, 174 La. 43, 139 So. 753. Coffey v. LaLanne et al, La. App., 20 So.2d 614.
[8] Plaintiffs, in answer to the appeal, requested that the damage awarded to Mrs. Cassar be increased from $5000 to $10,000. Counsel for defendant has urged that the $5000 award made be reduced.
At the time of the trial — fifteen months after the accident — Mrs. Cassar complained of recurrent headaches, pain and swelling of the left thigh, insomnia and nervous disorders. Meantime, she had undergone an abdominal operation, its cause not shown to be connected with the injury.
In addition to her subjective symptoms, there was still visible a healed blood clot in the muscles of her left thigh.
The preponderance of the medical testimony, including that of defense witness, Dr. C.A. Peterson, was that Mrs. Cassar's recurrent headaches and excess nervousness, as well as the hip condition, could be attributed to the accident. Fortunately, for her sake and for the defendants in the matter of damages, she is improving. We have concluded that a fair award is $3,500.
For the reasons assigned, the judgment insofar as the awards to plaintiffs, Anthony C. Cassar and New York Underwriters Insurance Company, is reversed and judgment is hereby rendered rejecting their demands.
The judgment of the District Court awarding damages to Mrs. Helen Cassar is reduced to $3,500, and, as amended, is affirmed.
Costs of appeal to be paid by plaintiffs. Other costs to be borne by defendants. *Page 801