EARL R. BRAZEE, Plaintiff and Appellee, *v.* MR. & MRS. WISE, ETC., Defendants and Appellants.

No. 12313. Resubmitted June 20, 1961.—Decided June 29, 1961.

*J. M. Valentín Esteves* and *Antonio A. Simonpietri* for codefendants and appellants Mr. & Mrs. Wise and American

Armed Services Underwriters, Inc. *Rivera-Zayas, Rivera-Cestero & Rúa* and *Aldo Segurola de Diego* for codefendants and appellants Joseph E. Welton and Hartford Accident & Indemnity Co. *Santiago Polanco Abréu* for appellee.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The controversy raised in the present appeal is not between plaintiff and codefendants. It is limited to codefendants between themselves. It is an action for damages in which codefendants admit there was negligence, but each one maintains that the other is the only one responsible for all the damages suffered by plaintiff.

The accident occurred at Km. 4, Hm. 3 of Highway No. 5, at the territorial boundary of the Municipality of Aguadilla. Plaintiff was a passenger in an automobile driven by codefendant Welton. This vehicle was going towards Ramey Base. Another vehicle was traveling in front, driven by the wife of codefendant Wise. Wise's wife was joined as defendant as well as the companies which insured Welton and Wise. Both cars moved at a rate of speed calculated between 40 and 45 miles an hour. The vehicle driven by Mrs. Wise slowed down considerably—it practically came to a stop—and signaled to show its intention to turn, momentarily swerving towards the left, then changing its course towards the right at an angle of approximately 90 degrees, with the obvious purpose of entering a private road located on that side of the highway. At that very moment, the vehicle driven by Welton collided with that of Mrs. Wise on the right-hand side and due to the impact, plaintiff, who was sitting in the front seat of Welton's car, broke the windshield, making a hole therein. Plaintiff suffered several wounds on his face which have left permanent scars of disfigurement "particularly a wound which runs from his left cheek and crosses over the upper lip reaching his right cheek, thereby impairing the use of his lip, precluding plaintiff from closing his lips completely,

especially on the left side of that lip, and other wounds which have left permanent scars on his nose, his forehead and cheeks."

The complaint was granted. Both codefendants were ordered to pay "share and share alike," the sum of $9,000 plus $1,500 for attorney's fees.

As we have said before, the only issue to be decided in the present case is whether both codefendants or only one of them is responsible for said damages. Both of them based their appeal on the allegation that the above-mentioned situation of facts relieves them from liability, maintaining that the full liability falls on the other codefendant.

 Both of them are liable. At the trial the only witnesses who testified, besides the physician who treated plaintiff at the time of the accident, were plaintiff and the two codefendants who were driving their vehicles, respectively. The court gave credit to plaintiff's testimony, which is corroborated in certain respects, by that of the codefendants themselves. From this testimony it appears that the responsibility rests with both drivers, since both of them were obviously negligent. The above-mentioned situation of facts establishes this. Let us see how plaintiff Brazee described the accident. Referring to Mrs. Wise's conduct, we copy the following from the transcript of the evidence at pp. 20 and 32:

"A.—We were going towards the Base, following car No. 1, and she started to slow down and started to take a left curve, and it seemed as if she was going to go off the highway to the left, or take a left turn, swerve towards the left; then she drove across the highway towards the right and the car in which I was riding hit hers on the right side with an impact." (Tr. Ev. 20.)

"Q.—Tell the court how Mrs. Wise maneuvered her car that made you believe it was going to turn towards a house.

"A.—Ordinarily, when a car starts to turn right, it turns right, but she started to move to the left, she crossed half of the left side of the highway, at least she crossed the center

line, drove straight ahead and turned to the right in order to enter the private road." (Tr. Ev. 32.)

And as to codefendant Welton, driving the vehicle where plaintiff was riding, we copy the following from page 24:

"Q.—I ask you whether anything happened in vehicle No. 2 in which you were riding, in relation to the driver of car No. 2 before the accident occurred.

A.—Nothing happened; he was not paying too much attention to the road and I was pointing out to him the dangers.

Q.—Why were you pointing out the dangers to him?

A.—I don't know, but he did not slow down when the car started to stop.

Q.—Which car started to stop?

A.—When car No. 1 started to turn.

Q.—And to what danger do you refer when you say that you called his attention to a danger?

A.—I told him 'Joe, watch that car.'" (Tr. Ev. 24.)

Mrs. Wise was careless and negligent in swerving her automobile towards the left in order to turn right afterwards without making sure that no automobile was following. The use of the signal lights as well as the hand signal showing that she intended to turn right did not excuse her from her duty to exercise the proper care in making such a turn. The fact of making the above-mentioned signals does not authorize a driver to ignore the fact that a vehicle is coming in the same direction. The signals are a necessary aid for driving motor vehicles on highways, but clearly they do not authorize the driver to abstain from exercising care and circumspection at that moment. *Cf. Portalatin* v. *Noriega*, 33 P.R.R. 755, 762 (1924). As stated in *Cassar* v. *Mansfield Lumber Co.*, 35 So. 2d 797, 799 (La. 1948):

". . . . when a driver makes a left turn under circumstances that the movement cannot normally be made in safety, it is not a valid excuse that he gave the appropriate hand signal before making the obviously unsafe movement."

There is no doubt either as to the negligence of Welton, who drove the second vehicle in which plaintiff was

traveling. It was his duty to keep his attention on the road and the other automobiles traveling thereon. It is the duty of every driver to have the vehicle which he is driving under constant control at all times, so that he may timely stop the same if an emergency suddenly arises. The general applicable rule to a case such as the present one is expressed in 4 Shearman and Redfield, Negligence at p. 1655, as follows:

"Following vehicle must so govern speed or keep back as to provide for contingency that forward vehicle may suddenly decrease speed or stop."

The case of *Hardin* v. *Yellow Cab Co. of Shreveport*, 38 So.2d 814, 815 (La. 1949), presented a situation of facts similar to the one involved in the case at bar, and the court stated the following in deciding the same:

"Upon the principle established by our jurisprudence to the effect that a motorist is held to have seen what he could and should have seen, the drivers of both vehicles were negligent, the driver of plaintiff's car by reason of his failure to observe the turning movement of the taxicab, and the driver of the latter vehicle by reason of his failure to observe the car approaching from the rear."

Therefore, the conclusion reached by the trial court making both drivers responsible is correct.

The judgment is affirmed.

Mr. Justice Serrano Geyls did not participate herein.