## BOURGEOIS v. LONGMAN.
### No. 2150.

Court of Appeal of Louisiana. First Circuit.
Dec. 12, 1940.

Rehearing Denied Jan. 14, 1941.
Writ of Error Refused March 3, 1941.

. John T. Hood, Jr., of Jennings, for appellant.

Plauche & Plauche, of Lake Charles, for appellees.

LeBLANC, Judge.

This is a suit instituted by a father on behalf of his minor son to recover for the benefit of the latter damages in the sum of

$7,000 from the defendant, Reggie Longman, for physical injuries alleged to have been suffered by the minor on the night of November 3, 1938, when he was hurt in a rather unusual automobile accident which will be hereafter described in detail. A demand for $550 is also made by the plaintiff himself for medical, hospital, doctors' and ambulance expenses incurred in the treatment of his son's injuries.

Plaintiff alleges that at about 9 or 9:30 o'clock of the night of the accident, his son, Hubert Bourgeois, an employee of Benoit's Service Station at Welsh, Louisiana, was sent out on a call with a service wrecker to assist Eugene Romero whose truck had become disabled and was in a ditch on Highway 90, approximately five miles west of Welsh. That the night was extremely rainy and windy and visibility very poor. He alleges that as the Romero truck was in the ditch on the south side of the highway, the rear extending on the paved portion not exceeding a distance of three feet and therefore was facing southeast, his son drove the wrecker beyond to a point about a quarter of a mile further west so that he could turn it around and he then brought it back stopping it immediately in front of the truck, entirely on the south side of the highway, so that he could effectively use the boom in order to hook up the truck, hoist it from the ditch and haul it into Welsh.

He alleges that immediately upon bringing the wrecker to a stop in the position described his son alighted from the driver's seat on the left, went to the rear, turned on the boom light and began to let the boom down in order to hook the truck to it, when at that instant, a car driven at an excessive rate of speed and in a reckless manner by the defendant, Reggie Longman, travelling east, ran into the rear end of the Romero truck and caused his son to become pinned against the wrecker as a result of which he sustained the injuries complained of. He further alleges that because of the suddenness of the accident, a period of less than sixty seconds having intervened from the time he alighted from the truck, and also because of the weather conditions prevailing, his son does not know whether the impact moved the truck forward with such force as to crush him between the two vehicles where he was standing or whether the defendant's car itself, after striking the Romero truck, skidded in a circle and itself crushed him against the wrecker.

Plaintiff further avers that the accident was in no way caused or contributed to by his son and that Eugene Romero was likewise in no way responsible therefor but that if, for any reason, Romero might be held to have been negligent in any manner, his negligence cannot be imputed to his son. He sets out that the accident and resulting injuries and damage to his said son were caused entirely by the gross negligence of the defendant in driving his car at an excessive rate of speed in view of the weather conditions existing, in failing to keep a proper lookout for obstructions on the highway and in not having his car under such control as to be able to stop it within the range of vision projected by its headlights. In the alternative, he pleads that the defendant had the last clear chance to avoid the accident. The injuries alleged to have been sustained by his son consisted of a broken thigh bone, necessitating three operations, massive haematoma, lacerations of the leg and face, general body contusions and severe shock. The plaintiff's minor son's employer, C. J. Benoit, and the latter's compensation insurer, American Employers Insurance Company, intervened in the suit making a demand on the defendant for the amount paid Hubert Bourgeois for workmen's compensation and for medical expenses up to the sum of $250 which they are obligated to pay under the Workmen's Compensation Statute of this State, Act No. 20 of 1914.

The defendant filed an exception of no right or cause of action which was overruled and then filed his answer in which he admits that on the night of the accident under the weather conditions described in plaintiff's petition, a collision occurred at the point on the highway mentioned, in which his car, which he was driving, the Romero truck and the Benoit service wrecker were involved, but he denies the charges of negligence made against him. He avers that the Romero truck was parked at an angle on the highway with the rear end extending and reaching as far as the black stripe in the center of the pavement and that the wrecker stood immediately next to it at the rear, the two blocking the entire south half of the paved portion of the highway. It should here be stated that the position of the wrecker was incorrectly given in defendant's answer and it was conceded during the trial that it was east of the Romero truck next to its front end. Defendant avers that there were no

lights, flares or flags nor any other form of signal on the highway to serve as a warning and that although he was keeping a vigilant lookout it was impossible for him to see the obstruction until he was within a distance of approximately ten feet from it at which time he was unable to bring his car to a stop especially so as the pavement was wet and slippery. He avers that he attempted to turn his car to the left and although he was going at a slow and prudent rate of speed and did all that he could within his power he could not avoid striking the parked vehicles.

Defendant charges the operator of the service wrecker truck, Hubert Bourgeois, with gross negligence in the following particulars: (1) Failing to set out lighted flares on the highway as provided for in Act No. 164 of 1936; (2) failing to put out flags or other forms of signals as a warning that the highway was blocked; (3) failing to wave a flashlight or having someone do so to serve as such warning; and (4) failing to turn on or locate lights on or near the parked vehicles so that approaching motorists could see them in time to avoid running into them. Defendant charges Romero too with the same negligence which he alleges against Bourgeois and as they were both tort-feasors and Bourgeois had assumed control over both vehicles, Romero's negligence is imputable to the said Hubert Bourgeois. In the alternative defendant pleads contributory negligence on the part of the plaintiff as a bar to his recovery.

Assuming the position of a plaintiff in reconvention defendant demands damages of the plaintiff and his son in the sum of $856 for personal injuries which he sustained in the accident and for repairs to his automobile.

There was judgment in the district court in favor of the plaintiff and against the defendant, the award being in the sum of $3,064 for the use and benefit of plaintiff's minor son and $317.65 for plaintiff himself for medical and other expenses incurred in his son's treatment. The judgment also subrogated the intervenors to the sum of $250 for medical expenses and also whatever amount they had to pay Hubert Bourgeois for compensation during his period of disability. The defendant has appealed and plaintiff has answered the appeal asking an increase in the amount of the award to the sum originally demanded.

It may be stated that in a general way the facts relating to the occurrence which caused this accident are not seriously disputed. It is admitted by all of the witnesses who testified concerning the same that the weather was horrible, a hard and incessant rain falling in gusts which made automobile driving extremely difficult. The range of vision was hardly better than ten to fifteen feet.

Eugene Romero was on his way from Lake Charles to Lafayette and at about 8:30 or 9 o'clock when he reached the point on the highway where the accident took place, something happened to the driving rod of his truck, so he stopped it and says that he drove it forward into the ditch on the south side of the highway. He then walked to Welsh to obtain the services of a wrecker. He went to Benoit's Service Station and young Hubert Bourgeois who was working there took out the wrecker and they both drove out to the place where the truck was standing disabled on the highway. In order to turn the wrecker around it was necessary for them to drive about a quarter of a mile further west than the truck. After turning around Bourgeois drove the wrecker back east and parked it immediately in front of the truck in order to properly adjust the boom with which he was going to hoist it.

Bourgeois and Romero were the only persons present and whilst the latter would have the court believe that the lights on his truck, including the tail and side clearance lights, were all burning, the preponderance of the testimony is that only the headlights were on. Romero also says that there were lighted flares set out on the highway but in this he is admittedly in error. On getting out of the wrecker Bourgeois walked to the rear standing between it and the truck, put on the boom light and began to adjust the boom in order to hook up the truck.

Whether the headlights of the truck which naturally projected a beam east or southeast afforded any warning to traffic coming from the west is a disputed question. It is contended that the boom light which projected its beam west gave no such warning because it was entirely obscured to the vision of an automobile driver coming from that direction by the solid body of the truck against which it reflected. It would seem however that these lights should have produced a glare on the highway at that point which should have given some indication that there was a form of obstruction there.

Some dispute also arose as to the exact position of the Romero truck on the highway, that is whether the rear end extended diagonally only three feet on the pavement or up to the black stripe in the center. We believe the preponderance of the testimony is that whilst it did extend a few feet on the south side of the pavement it certainly did not project as far as the center stripe. However we do not think that that is a matter of serious or controlling importance in fixing the responsibility for the accident.

█ It is shown by defendant's own admission, that when he passed another vehicle on the highway at Lacassine, about one and one-half miles further west, he was going forty-seven miles per hour and then only slowed down ten or fifteen miles. He then must have been going between thirty and thirty-five miles when he reached the obstruction and ran into the Romero truck. He says he did not see it until all of a sudden, to quote his words, "it looked like a board wall in front of me." The force of the blow was strong enough to completely demolish his car and shatter the wooden body of the truck. In view of his own admission that, because of the weather conditions which prevailed, and further that he could not stop his car within less than forty feet, we are of the opinion that the defendant has practically confessed his own negligence and the important issue in the case is whether young Bourgeois was guilty of any such contributory negligence as to bar his recovery.

Whilst there are four specific charges of negligence made against him they all relate to his failure to have given a warning or signal of some kind of the presence of the trucks on the highway and the one that is really stressed is his failure to have displayed lighted flares as required by the Statute, Act No. 164 of 1936. We can hardly see what purpose would have been served by the display of flags for the failure of which Bourgeois is also charged with negligence. In such weather as is described by all the witnesses who were on the highway that night, flags could not possibly have given any kind of warning to approaching motorists. We do not know either on what theory Bourgeois could be held responsible for the absence of tail and side clearance lights on the Romero truck, so the only ground on which he could be held negligent would be because of his failure to have placed lighted flares on the highway as required by the law invoked by the defendant. In other words, his negligence, if any, would arise out of a violation of that law.

█ We think it is well settled that a violation of a law regulating traffic on the highway does not constitute negligence per se. In order to hold the one who violated it responsible in damages it must appear that the manner of his violation was the proximate cause of the accident and the resulting injury. It is evident in this case that lighted flares were not displayed and therefore the law in that respect was not observed. Bourgeois testifies that his first act after alighting from the wrecker was to turn on the light on the boom and then lower the boom in a position to hook up the truck. He states that his next act would have been to take out the flares from the box in which they were kept and light and place them on the highway, but before he could, the accident had occurred. The time that is required to take out flares, light them and place them on the highway, according to the testimony in this case, ranges anywhere from three to five minutes. According to Bourgeois' testimony, the only one on this point, less than one minute intervened from the time he got out of the wrecker to the moment of the impact. Assuming therefore that he was negligent in not strictly observing the law because he did not direct his attention first and immediately to the flares, it is obvious that he could not possibly have lighted and displayed them in time for defendant to have seen them before running into the truck and therefore his negligence in that respect cannot be said to have been a contributing cause to the accident which, in our opinion, as in that of the district judge, resulted solely and entirely from the gross negligence of the defendant.

█ The district judge summarized young Hubert Bourgeois' injuries as consisting of a compound comminuted fracture of the left femur, lacerations of the left leg below the knee and of the face over the right eyebrow, together with severe bruises over the legs and body. The fracture necessitated the placing of his leg in a cast and a later resetting, all of which involved a period of forty-seven weeks' treatment. After healing there remained a rather marked bowing of the leg and he has, as a result, a ten per cent disability in its use. We think that the award of $2,000 for his leg injury as well as that of $500 for shock and physical pain and suf-

fering was proper. It is shown that at the time he was injured Bourgeois was earning $12 wages per week and therefore he was also correctly awarded the sum of $564 for forty-seven weeks' disability. The amount of $317.65 allowed his father for medical expenses does not seem to be questioned, so all told, we think that proper damages have been awarded in the judgment appealed from. We note that it also correctly subrogates the intervenor American Employers Insurance Company to the extent of its demands as the compensation insurance carrier of Hubert Bourgeois' employer, C. J. Benoit.

As it is, in our opinion, correct in every respect, the judgment appealed from is affirmed at the costs of the defendant, appellant herein.