Plaintiff filed this suit as an action in tort against the defendant Dr. J.L. Beyt and his public liability insurance carrier, Traders General Insurance Company, for damages by reason of the negligence of the driver of one of Dr. Beyt's sugar cane trucks, in having parked it on the highway in the nighttime, in the center of its lane of traffic, without lights and without any warning or other signal of its presence there, thus causing him to run into it with his automobile with the result that he suffered severe physical pain and the loss of his car. The demand is for the total sum of $1556, including pain and suffering, the cost of an operation for hernia which, it is alleged, has been made necessary by reason of the injuries sustained, loss of time from work and damage to his automobile.
The defendants filed an exception of no cause or right of action which was overruled by the trial judge and with full reservation of their rights thereunder they filed an answer which may be said to constitute a general denial of all of the allegations of negligence charged by the plaintiff against the driver of the truck. They further plead that not only was the driver not negligent in any respect but that on the contrary he took all the precautions necessary and which were available to him in the short time after his truck had become disabled and he had to stop on the highway with it, expressly averring that the lights were all burning and that the driver himself endeavored to hail plaintiff as he approached the truck. On the facts as alleged by them they further plead that even if there had been any negligence whatever on the part of the truck driver, plaintiff himself was guilty of contributory negligence which bars his recovery.
After trial of the case on the merits there was judgment in the court below in favor of the defendants, rejecting the plaintiff's demand at his costs, from which judgment this appeal was taken.
The trial judge has supplied the record with a very well considered written opinion *Page 474 
in which he analyzed the facts in detail and cited and applied the law and the jurisprudence which he thought pertinent to the issues that were involved. We have carefully reviewed the record and find ourselves in thorough accord with the conclusions reached by him, especially those with regard to the plea of contributory negligence which had been urged against the plaintiff.
The law which governs the case is that which relates to the duties of drivers of motor vehicles on the public highway after dark or in the nighttime. Rule 15(a) of Section 3 of Act No. 286 of 1938 provides that if a motor vehicle "is left parked, attended or unattended, one half hour after sunset or one half hour before sunrise, the person stopping it or parking it at that time or place, (upon the paved or improved or main traveled portion of any highway) or causing it to be so stopped or parked or left standing, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence thereat." By the terms of subsection (c) of the same rule, its provisions do not apply "to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position; * * *."
Act No. 164 of 1936, known as the "Flare Law" requires operators of motor truck vehicles or combinations thereof, among others, driving on the highways during the period from one half hour after sunset to one half hour before sunrise, to have their truck equipped at all times with at least three portable flares which may be plainly visible for a distance of five hundred feet. The operator of such truck must, immediately upon bringing his vehicle to a stop on the highway or immediately adjacent to the traveled portion thereof, during the period referred to, display the lighted flares at certain places on the highway as designated in the act.
Subsection (g) of Section 9 of Act No. 286 of 1938, requires that "every vehicle operated upon a public road, highway or bridge in this State, during the period of one-half (1/2) hour after sunset to one-half (1/2) hour before sunrise, and at any other time when there is not sufficient light to render clearly discernible any person on the highway for a distance of two hundred (200) feet ahead, shall be equipped with lighted front and rear lamps as required by this Act for the different classes of vehicles, * * *."
[1] There is another rule which, although not embodied in any provision of the State Highway Regulatory Act, may be said to have become crystallized into law by the jurisprudence of this State. That is the rule which makes it incumbent on the driver of any motor vehicle at night to keep the same under such control as to be able to stop it within the distance projected ahead of him by his headlights. From the provisions of the rule just stated regarding lighting equipment we would infer that his headlights should project a distance of two hundred feet in front of him.
[2-4] It is a general proposition of law which seems to be well established in this State that the violation of the provisions of any statute such as we are here concerned with, or with any rule laid down in them, does not constitute negligence per se and in each case negligence vel non must be judged on the particular facts presented.
The testimony in this case is somewhat voluminous but we think the essential facts may be briefly stated as follows:
The driver of the truck whose name is Husville Melancon, is a man over twenty-five years of age. He had been driving trucks some three or four years before the time of this accident. He was entrusted by his employer, Dr. J.L. Beyt, with the driving of one of these enormous sugar cane trucks during the sugar cane harvesting season. On the night of January 9, 1945, at about eight-thirty o'clock, he was on his way from a point near St. Martinville to New Iberia to deliver a load of sugar cane, weighing approximately ten tons, to a sugar factory. When he was about three miles south of St. Martinville the truck developed some trouble in the left rear wheel, evidently a hot box or burnt bearing, and he found it necessary to do something about it. As he was nearer St. *Page 475 
Martinville he decided to turn around and try to return there. He turned and had gone a mile or so when he noticed that there was more smoke coming from the hub cap of the wheel so he decided to stop. He parked the truck on the east travel lane of the highway at a point near the Daigre Canal. He summoned assistance from the garage in St. Martinville where his employer's trucks were taken care of but it never reached him until after the plaintiff, who was driving his car from New Iberia to St. Martinville, had run into the rear end of the truck.
Plaintiff claims that he was blinded by the glaring headlights of four different automobiles which approached him, one after another, from the opposite direction as he neared the truck and that he was unable to see it. He claims too, that there were no lights at all burning on the truck and on account of its barrel shape in the rear and it being covered with mud and dirt, its color blended with the color of the highway and all of that made it still more impossible for him to see it.
There are two disputed questions of fact presented in the case. One with regard to whether or not the lights on the truck were on and the other with regard to whether or not the driver of the truck did, as he said he did, stand behind the truck to warn approaching traffic of its presence on the highway.
There may be reason to question the fact testified to by the truck driver that the tail light was burning. He testified that it was and plaintiff testified that it was not. There was no way of telling after the accident whether it was or not, because evidently it was broken by the force of the impact between the two vehicles. Plaintiff and one of his witnesses testified that even the clearance lights were not on but on this point the preponderance of testimony favors the defendants. These clearance lights, showing from the side of the truck, should, in our opinion, have afforded some sort of signal to anyone approaching it from either direction, that there was some object parked on the highway which required prudent and attentive driving.
The testimony of the driver of the truck that he stood some ten feet behind it and waved his handkerchief in an effort to have plaintiff stop before reaching the truck is sharply disputed by plaintiff and because of the testimony of the witness Ivy Louviere who met the truck just after it had stopped and before plaintiff ran into it, that the driver was then standing near the front of the truck, we entertain some doubt on this question also.
A serious and important point on the matter of the truck driver's negligence is the one concerning his parking the truck on the paved portion of the highway without any effort, apparently, to park it on the shoulder. His only reason for not doing so was, as he says, that with the heavy load it had, he was afraid the truck would bog down. That, to us, seems to be a debatable proposition. There is no testimony to show that the shoulder was soft and besides when he had turned around on the highway just a moment before, surely it must have been necessary for him to drive part of this long truck on the shoulder. The law, as we have seen, although making an exception in the matter of parking on the paved or improved or main traveled portion of a highway in favor of disabled vehicles, grants that favor only when a vehicle is disabled "in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving" it in such position. Since the truck in this case was still running when the driver decided to stop it, evidently it was not disabled to the extent that he could not have pulled over on the shoulder where, as far as the record shows, it would have been safe for him to go.
[5, 6] Melancon, the truck driver, testified that only two or three minutes elapsed between the time he stopped and the time he noticed plaintiff's car approaching from the rear, and in that interval he could not possibly have displayed the flares which he carried in the truck, as required by the "Flare Law". Whilst the statute uses the word "immediately" in providing how soon after coming to a stop the driver shall display his lighted flares, ordinary reasoning forces the court to take the time involved in getting the flares out, lighting them and placing them on the highway into consideration, as an element in construing what *Page 476 
is meant by the word "immediately" and it has been held in certain cases that anywhere from two to five minutes, depending on the circumstances, is not an unreasonable time to allow for a compliance with the terms of the statute. See Beach v. Union Brewing Corp., La. App., 187 So. 332 and Bourgeois v. Longman, La. App., 199 So. 142.
If therefore, there was any negligence whatever on the part of the driver of the truck, it arose out of his failure to have parked his truck on the shoulder instead of in his lane of travel on the paved portion of the highway, and in this respect we may well assume that he was negligent and yet plaintiff could not recover because of his own negligence which was a contributing cause of the accident.
Plaintiff had alleged in his petition that the dirt and mud which had accumulated on the rear end of the truck had the effect of giving it a color which blended with the color of the pavement and that made it difficult for him to see it in the dark. He also alleged that when he reduced his bright lights to dim that had the effect of projecting the light beam downward and on account of the scooped or barrel shape of the rear end of the truck, his lights did not reflect it standing there before him. But what proof there is in the record is not sufficient to bear out these contentions. Besides, as already pointed out, even though the tail light on the truck may not have been burning, the preponderance of the testimony shows that all the clearance lights were on and these, it strikes us, should have given him some warning of a vehicle or some object being stationed on the highway.
His claim of having been intermittently blinded by the glaring headlights of four cars which he met coming from the opposite direction is not supported by the proof. There is serious conflict in the testimony with regard to more than one car having met his and as to this one, the meeting took place when he was forty feet away from the truck. It is significant that he states that he was not blinded by the lights of this car. But even if he had been, he had his dimmers on at the moment they met and he admits that they projected a distance forty feet ahead of him. This car, having met his forty feet away, naturally the blinding effect which its lights had produced on him had passed away and why he yet did not see the truck until he was only ten feet away from it, as he admits, is a circumstance which militates very strongly against him.
From the physical facts resulting from the impact of the car with the rear end of this truck, we are inclined to believe that plaintiff was not driving as slow as he says he was, that is from twenty-five to thirty miles an hour, and it may be that on account of the speed at which he was traveling he was unable to stop his car or take any more precautions than he did to avoid running into the truck.
[7] The trailer on this truck is built in what is called a barrel shape. The sides are rounded and they taper at the front and back ends. The bottom of the frame stands about two and a half to three feet above the level of the ground. There are dual wheels on the rear end which fit on each side into an axle and the axle itself is bolted to the frame of the trailer with half inch bolts, four on each side. The car rammed into the truck with such force that it shoved the axle forward about one foot, breaking off the four bolts on the left side and twisting the four on the right side. The front end of the car was all mashed up and jammed so tightly under the trailer that it was necessary to get a wrecker to pull it away. All of this is mute but convincing evidence of plaintiff's negligent driving under the circumstances and his negligence, we hold, as did the learned district judge, "was the active force and the proximate cause of the accident which he complains of. His own contributory negligence bars his recovery."
The demand was properly rejected and the suit dismissed by the judgment appealed from and it is accordingly affirmed. Appellant to pay all costs.
ELLIS, J., absent.
J. CLEVELAND FRUGE serving as Judge ad hoc. *Page 477