This is a suit by T. J. Singletary, individually for medical and other expenses and for property damage, and on behalf of his minor son, John Noland Singletary, for personal injuries sustained by the said minor son, all arising out of a collision between a Ford Coupe automobile allegedly owned by the plaintiff, T. J. Singletary, and driven by the said minor, accompanied by his father, and a lumber truck with an attached trailer, belonging to defendant E. W. Kirby, and driven by Robert Hamilton, an employee of the said Kirby, and while in the course and scope of his employment. The suit is against Robert Hamilton, the driver, E. W. Kirby, the owner, and his insurer, Standard Accident Insurance Company.
The accident occurred on the afternoon of June 28, 1946, at about 4:00 P.M., on Louisiana Highway 36, commonly known as the Plank Road, at a point within the Parish of East Baton Rouge and at a point approximately three miles north of the intersection known as the Zachary Crossing and about 17 miles north of the then City limits of Baton Rouge. At the point of collision, the said highway is a straight and level black top highway of at least eighteen feet in width for at least a mile in either direction. The automobile driven by young Singletary was proceeding south while the truck-trailer was proceeding north.
Plaintiff alleges that the accident was due entirely to the gross recklessness and negligence of Hamilton, as more fully alleged hereinafter.
Plaintiff alleges that his son was driving the Ford Coupe automobile in a southerly direction, well on the western side of the *Page 190 
said road, at a moderate rate of speed, approximately 45 to 50 miles per hour; that there was a large cattle truck going north approaching from the south, in its right hand side, the eastern side of the road; that as the Ford and cattle truck approached each other, preparatory to pass each other, the Kirby truck, which was also proceeding in a northerly direction, well behind and screened by the cattle truck, suddenly turned to its left, out into the lane of traffic along which plaintiff's car was proceeding; that when this sudden swerving of the Kirby truck to its left, from behind the cattle truck, into plaintiff's lane of travel, occurred, a collision appeared to be inevitable as there was no time for plaintiff's car to be brought to a stop or otherwise avoid the impending collision; that his son cut to the right well out on the shoulder on the extreme western side, his right hand side of the road, driving his car into the ditch on his side of the road, and while in that position the left front of the Kirby truck struck the left rear of plaintiff's car. The gist of plaintiff's allegations is that the accident happened on young Singletary's extreme right hand side of his lane of travel and well to his right of the center of the highway. The plaintiff further alleges that his automobile was severely damaged and his son was seriously injured. In the alternative, the plaintiff alleges that the Kirby truck driver had the last clear chance of avoiding the accident by pulling his truck back on to his own side, the eastern side, of the road.
The defendants, in their answer, after specifically denying any negligence on the part of Hamilton, the driver of the truck-trailer, allege an entirely different version of what occurred. Their version is as follows:
"Defendants show that as the cattle truck neared the approaching car of petitioner there was a car parked on the east side of the Plank Road, facing South, partly on the shoulder, and partly on the blacktop; that as the cattle truck which was ahead of defendant Kirby's truck operated by defendant Hamilton, passed this parked car, veering to the left, and completely passed the parked automobile, it straightened out on the cattle truck's right side of the Plank Road and proceeded North, and that as it had straightened out defendant Hamilton noted the automobile of petitioner proceeding South at a terrific, unlawful and reckless rate of speed, and noted that it just barely missed striking the cattle truck; that defendant Hamilton seeing that if he attempted to follow the cattle truck and pass the parked car he might likewise narrowly miss being struck by petitioner's car, or be actually struck, he slowed his truck down, did not attempt to pass the parked car but came to a stop South of the parked car on the East side of the center of the Plank Road with the wheels of the truck practically on the East edge of the blacktop portion where it joins the shoulder, and that after narrowly averting a collision with the cattle truck aforesaid, defendant Hamilton noted the petitioner's automobile, being driven at that time by his minor son, began to vear, and skid, and seemed to be out of control, and that without slackening speed the car swerved and skidded in the highway over the centerline thereof with the front end headed in a westerly direction, and the rear end swinging South and eastward in a skid, and that the left rear fender and bumper of plaintiff's car skidded across the center of the highway and struck the truck of defendant Kirby (operated by defendant Hamilton) on the left front fender of said truck, at a point just beneath the left fender parking light, ripping off a portion of the left front fender of said truck."
The defendants specifically aver that the accident was caused by the negligence of young Singletary "in proceeding at an unlawful, reckless and dangerous rate of speed on the highway which was damp and slick at the time, and which had some loose surface rocks or gravel thereon, and that petitioner's minor son did not have the automobile under control, but in fact lost control of same and the collision was due entirely to his negligence, and to the fact that his negligence caused him to skid from the west across the center line of the highway to the east with his car swirving, the rear end going around faster than the front end, and the car facing in a westerly direction across the center line, and continuing until the collision." *Page 191 
In the alternative, the defendants plead contributory negligence in bar of recovery.
Upon these issues, the case was tried. The trial judge has favored us with written reasons for his decision of the case. In those reasons, he states:
"Plaintiff contends that the proximate cause of the accident was the act of the driver of the lumber truck in suddenly swerving from behind the cattle truck to the left side of the highway and into the path of the oncoming coupe.
"The defendants on the other hand say that the approximate cause of the collision was the act of young Singletary in driving on the wrong side of the highway at a dangerous and excessive rate of speed on the moist highway and without keeping a proper look out.
"It will be readily observed that the case presents almost entirely questions of fact. Obviously if the accident happened as plaintiff claims it did, defendants are liable. If on the other hand it happened in the way defendants contend that it did, the suit should be dismissed."
After a review of the testimony of each witness who testified in the case and after commenting on the physical facts found by some of the witnesses, the trial judge has this to say: "I am firmly of the opinion that the plaintiff has failed to show any negligence of the driver of the lumber truck which could be said to be a contributing or proximate cause of the accident. On the contrary I am of the opinion that the accident was due solely to the negligence of plaintiff's minor son." He dismissed plaintiff's suit. Plaintiff has appealed.
The primary question is the location of the Ford automobile and the Kirby truck with respect to the center of the road when the contact between them occurred.
The record discloses that aside from two elderly negroes who were not summoned as witnesses, there were four eye witnesses who gave testimony concerning the accident; plaintiff and his son, Robert Hamilton, the driver of the truck, and Albert Scott, a fellow employee of Hamilton, who was riding in the cab with Hamilton.
Plaintiff testified that his son was driving the Ford coupe at about 45 or 50 miles per hour, in its traffic lane on the right hand side, on approaching the scene of the collision. There was a red cattle truck, with a stake body, on its right hand side in its traffic lane, coming from the south, going reasonably slowly, approaching them. As they approached the cattle truck and got in real close proximity thereof, he suddenly saw the lumber truck pull out from behind the cattle truck. Due to the shortness of the distance, he saw that a wreck was inevitable and he immediately told his son to take to the ditch, which his son did, "slowing the car down and taking the ditch was one and the same action." At the moment of the impact, the right front wheel was in the ditch, the left front wheel was on the gravel shoulder about two feet from the edge of the black top; the rear wheels were in line with the front wheels. While in that position, the truck hit the axle of the left rear wheel and with such force as to knock the Ford entirely in the ditch and splitting the nut holding the wheel on the axle. His son was knocked out of and under the Ford, his shoulder being wedged under the left wheel; he had been dragged on the gravel for twelve steps. His son pulled the Ford partly in the ditch some fifteen feet before the impact. He had not seen any furniture truck parked on the east side of the road. He states that after attending to his son, he examined the surface of the road where the collision occurred, and found some skid marks of between a foot and half to two feet where the left rear tire had skidded on the black top going into the ditch, at right angle to the black top; the gravel on the shoulder and the grass in the ditch were torn. There were no other skid marks made by his car. Although he testified that the Ford car came to rest in the ditch, nowhere in his testimony does he state where the truck finally stopped or came to rest. In one part of his testimony, he states that the truck was moved after the collision; later on he states that it was his impression that it was moved, and still later, he states that he is not absolutely positive as to when the truck was moved, whether before or after the State Police had arrived at the scene of the accident.
According to John Noland Singletary, plaintiff's minor son and the driver of the Ford automobile, he, the minor, was driving *Page 192 
south at about forty-five to fifty miles an hour; he first saw the cattle truck approaching about a half mile distant and well on its side of the road. As he and the cattle truck approached each other he had no reason to suspect an accident in that the cattle truck was travelling on its proper side of the highway and never, at any time, did it leave its proper side. He states: "* * * and when I reached approximately 65 or 70 feet from the cattle truck the lumber truck pulled out from behind the cattle truck on to my side of the road, and when I saw this I immediately applied the brakes, and then my father said to take the ditch which I was going to do anyway, and I turned the wheel, not releasing my brakes at all, and then we collided. My front wheel was in the ditch and my left front wheel was close to the edge of the black top." The car was not out of control and skidded slightly if any at all. At the time of impact, his car was well over on the west side, his right hand and proper side, of the road. The truck's left front wheel struck his left rear wheel. His left front door flew open and he was thrown out of the door upon the gravel. He, like his father, did not see the furniture truck parked on the east side of the road.
These two witnesses state that there had been intermittent showers; the road was slightly damp but the road wasn't slippery.
Robert Hamilton, the driver of the Kirby truck, testified that he, accompanied by Albert Scott, a fellow employee, was driving north, trailing a cattle truck for about a half mile. Near the situs of the accident, Warner Stewart lives in a house on the east side of the road. There is a little narrow driveway leading from the road to Stewart's house. At the time of the accident, there was a furniture truck parked in this driveway; the truck was facing south, with its right wheels on the black top and its left wheels on the gravel or shoulder. Upon approaching this parked furniture truck, the cattle truck swung to its left to go around the parked truck. He cut to the left also, and immediately saw the Singletary car coming. He cut back to his lane of travel and started slowing down. The cattle truck went around the parked truck and assumed its lane of travel. He saw when the Singletary car and the cattle truck passed each other, the Singletary car barely missing the back of the cattle truck. He states: "Well, when I saw his car coming down the road, just as it passed the cattle truck it was zigzagging across the road skidding, and I had come to about a dead stop when his back end flopped on the side of the road." He states that it was the left rear end of the car which was in his lane of travel. At the time of impact, the car was facing in a southwest direction and the car travelled in the direction of the ditch. He states: "From the front end of the truck where it hit to the landing where it landed in the ditch was about I imagine 22 paces (steps)." He places the locus of the collision sixteen steps from Warner's driveway. He is positive in his testimony that he was in his right lane of travel when the collision took place and that his truck had not been moved until the State Police had arrived and ordered its removal.
Albert Scott testified that there was a furniture truck parked on the east side of the road, facing south, partly on both the black top and shoulder, at Stewart's driveway; when the cattle truck got to the furniture truck, it swung out to go around the furniture truck; it straightened out in its proper lane of traffic after going around the furniture truck and it is then that he saw the Singletary car. The driver of the Singletary car applied his brakes causing the car to skid; it came "pretty close" to the cattle truck. The Singletary car skidded with the front end angling toward the ditch; the brakes were on when the back fender of the Singletary car struck the left fender of the Kirby truck, while the Kirby truck was on its right hand side, near the center of the road. After the collision the Ford took to the west ditch and the Kirby truck remained and was stopped in its lane of travel. He is positive the Kirby truck was not moved until the State Police arrived. He corroborates Hamilton's testimony to the effect that Hamilton started to pull out to go around the furniture truck, saw the Singletary car coming and then pulled back to his side of the road.
Warner Stewart testified that he was sitting on his front porch facing the highway; *Page 193 
the first thing which attracted his attention was the application of brakes; "the cattle truck was just pulling around the furniture truck and the cattle truck was driving slowly; the furniture truck was parked headed south on the east side of the road, partly on the black top and partly off in his driveway and in front of his gate. He saw the Singletary car after he heard the application of the brakes; the Singletary car passed the cattle truck not very far from the furniture truck, "space for a truck to pull around another truck." The Kirby truck was coming behind the cattle truck very slowly. Before the collision of the Ford and Kirby truck, the Singletary car "was kind of zigzagging. The road was wet." The collision occurred south of his driveway, south of his mail box; at the time of the collision, from his house, the Kirby truck seemed that it was stopped; it wasn't moving fast. The truck did not go any further. The ford went into the ditch on the west side. He ran to the situs of the accident. When he arrived at the situs of the accident, the Kirby truck was straight facing north and in its proper side of the highway. He states that he saw when Hamilton and Scott got out of the Kirby truck and he is positive that the truck was not moved until the state police arrived and had the truck removed from the lane of travel. He states that when he first saw the Singletary car, it seemed to him that it "was coming pretty fast" and that it was about 100 yards from the cattle truck. When he saw the Singletary car it was in front of his driveway, and it was zigzagging.
Malcomb Dougherty, Jr., son-in-law of the plaintiff, testified that he visited the scene of the accident on the next afternoon following the accident. He states that the grass and weeds were mashed down in the ditch. The west side of the ditch which was an embankment was scarred slightly and there was a skid mark very apparent on the west side of the road, at right angle to the road, and on the west edge of the road at approximately eighteen inches therefrom. There was a very apparent depression in the gravel shoulder. In the direct line with the skid mark, on the west bank of the ditch, there was a scar. He did not observe any skid marks on the highway north of the right angle skid mark. He was called on rebuttal. He testified mainly to a sketch he prepared upon which various measurements were shown.
Gorge A. Daigle, the driver of the furniture truck testified that he had parked his truck in front of Stewart's driveway on the left hand side of the road. However, he says that his truck was parked on the shoulder of the road and that no part thereof was on the black top portion of the highway. According to this witness, the collision occurred south of Stewart's mail box and in front of Hezekiah Scott's house. He was in Stewart's house at the time of the collision; he went to the scene of the accident after the crash. He saw the Kirby truck but he cannot give the location of it or state whether or not it had been moved.
C. J. Waston, the general foreman and mechanic of defendant Kirby, testified that he reached the scene of the accident prior to the arrival of the state police. He inspected the scene of the accident and the position of the car and truck. He states that the truck was parallel on the road and well on his own side, east side of the center, and that he questioned Hamilton, the driver of the truck, who stated that the truck had not been moved since the collision. He, the witness, told the driver not to move the truck until after the arrival of the police. He states that there were skid marks some distance above Mr. Singletary's car but would not venture to say how far, as he did not make any measurements. These skid marks were kind of zigzagging. He also testified that on the day previous to his testifying that he attempted to park his car in Stewart's driveway, so that no part of the same would be on the black top. He parked his car as close to the ditch as he could, and he stated the left wheels of his car were off the black top but the bumper and fender still protruded over the black top of the road. The shoulders of the road and Stewart's driveway are narrow. He states that the trailer part of the Kirby truck is 28 feet in length and 7 1/2 feet in width; that the overall length of the truck and trailer is 42 feet. He does not give the width of the truck but we presume it *Page 194 
was the regular width of 5 1/2 feet. The truck portion had hydraulic brakes.
Trooper O. D. Hayden testified that when he arrived, he found the truck was entirely on the east side of the center of the highway parallel to the road. The Ford was in the ditch on the west side and to the south of the truck. He made no investigation in that his duties were to take care of the traffic; the technical part was in charge of Trooper Arledge.
Trooper Lee Arledge testified that he and Trooper Hayden arrived at the scene of the collision at 5:00 P.M. On his arrival, he found the Ford car in the ditch on the west side of the road, facing south. The Kirby truck was in its normal traffic lane on the east side, with no part of either to the west of the center of the road. He states that he had no trouble locating the point of impact due to the usual settlement of dirt. He states that the debris was scattered around in a three or four foot diameter; the center of the diameter was near the center of the roadway, and that most of the dirt was on the west of the center of the black top. He states that the Ford entered the ditch south of the point of impact and came to rest fifty feet from the point of impact. He states that the front of the truck had not been damaged but that the damage done to it was behind the headlight on the left front fender of the truck.
He interviewed the truck driver, his companion and Mr. Singletary. The truck driver told him that he had started to pass another vehicle and that he saw the Singletary car coming, and that he cut back to his right and stopped, and while in this position the Singletary car struck the truck. He did not interrogate the boy at all. Mr. Singletary stated that his boy had applied the brakes on seeing the truck, causing the car to skid sideways and strike the truck. He places the point of contact about 30 feet south of Stewart's driveway. He also testified that Stewart's driveway was a very narrow driveway; the shoulders are narrow and that it would be impossible to park a car at that driveway without some part of it being on the blacktop. On cross examination he stated: "* * * from the point of impact the car (Ford) made almost a 45° angle toward the ditch and went into the ditch perhaps some ten or twelve feet from the point of impact until it was in the ditch." He testified that he found no skid marks running north of the collision. He states that the black top was wet and that such skid marks would not show up.
The examination of this witness covers thirty-seven pages of the transcript. It appears that most of his testimony is based on assumptions and was given from memory rather than notes or memoranda made by him. His testimony did not impress the trial judge. The trial judge doubted the value of his testimony and the report of the witness. For that reason we have only given such portion of his testimony which we find is corroborated by other witnesses in the case.
On these facts as set out above, the trial judge states:
"After a careful consideration of the case, I am of the opinion that the preponderance of the evidence forces the conclusion that this unfortunate accident was due to the negligence of plaintiff's minor son, which is attributable to his father, the plaintiff in the case. That negligence in my opinion consisted of the speed at which he was driving on a wet highway, his failure to keep a proper lookout for oncoming traffic, and the projection of the Ford coupe he was driving across the center of the highway. This projection in my opinion, was due to the skidding of the coupe which was caused by the tardy application of his brakes after he observed that the cattle truck turned to the left in order to clear the furniture truck which was illegally and improperly parked on the left side of the highway; or it might be that the young man's excitement was also occasioned by seeing the lumber truck which he believed was going to pass the cattle truck on his side of the road. The preponderance of the testimony is to the effect that regardless of what may have been the intention of the driver of the lumber truck, whether to pass the cattle truck or furniture truck, upon seeing the oncoming coupe skidding down the road, the driver of the truck pulled to a position on the east side of the road, leaving the coupe ample room to pass without a collision. *Page 195 
"It makes no practical difference whether the lumber truck at the time of the collision was stopped or almost stopped so long as it was on its side of the road and travelling at a reasonable rate of speed.
"Both the plaintiff and his son admitted that the coupe was being driven at a speed of from 45 to 55 miles per hour when the cattle truck was first observed some 300 yards away. If the brakes of the coupe were applied at this distance it is difficult to understand why when the coupe reached any of the three trucks involved, the coupe was skidding. Young Singletary admits that there was some skidding while other witnesses testified that the coupe prior to striking the truck was zigzagging down the highway. It seems to me that if young Singletary had been traveling at a safe rate of speed he could have handled the situation in a more effective and successful way.
"If the collision happened in the way plaintiff would have the Court believe, it would have been necessary for the front unit of the tractor to have been almost off the road on the west side when the impact occurred because he says the left rear wheel of the coupe, which he says was struck was only two feet from the edge of the ditch. Now, if the truck came that far over, how was it that immediately after the accident it was found on the east side of the road in normal traffic lane?
"Mr. Singletary says that he is under the impression that after the collision the truck was moved. The preponderance of the evidence is to the contrary.
"It is argued that owing to the fact that the impact took place south of the Warner Stewart driveway the presence of the furniture truck there could not and did not contribute to the accident. The preponderance of the evidence is to the effect that the cattle truck had to veer to the left to pass that truck. This and the fact that he saw the lumber truck trailing the cattle truck is what excited plaintiff's son, causing him to apply his brakes while travelling at a high rate of speed and the loss of control of the coupe.
"The photograph of the lumber truck does not indicate that it came in contact with the coupe from the front. On the contrary it indicates that the fender of the truck was struck behind the headlight which is an indication that the back end of the skidding coupe struck the fender at an angle.
"Counsel for plaintiff direct the court's attention to various alleged violations of the provisions of the highway regulatory act by the driver of the lumber truck. That there was a failure on the part of the truck driver to observe several of said regulations, there can be no doubt, but the evidence fails to show that any of such violations contributed to or were the proximate cause of the accident here involved. In these circumstances the plaintiff can not rightfully complain. See Bourgeois v. Longman [La. App.], 199 So. 142. See also [Williams v. Pelican Creamery, La. App], 30 So.2d 574.
"I am firmly of the opinion that the plaintiff has failed to show any negligence of the driver of the lumber truck which could be said to be a contributing cause of the accident. On the contrary I am of the opinion that the accident was due solely to the negligence of plaintiff's minor son heretofore mentioned, which is attributable to him."
In this court, plaintiff takes exception to the trial court's statement that: "Both the plaintiff and his son admitted that the coupe was being driven at a speed of from 45 to 50 miles an hour when the cattle truck was first observed some 300 yards away. If the brakes were applied at this distance it is difficult to understand why when the coupe reached any of the three trucks involved, the coupe was skidding." Plaintiff admits in his brief that young Singletary first saw the cattle truck when it was some 150 or 300 yards away but contend that young Singletary did not apply his brakes before the time that he and the cattle truck were only about 75 feet apart. We do not interpret the statement of the trial judge to mean that young Singletary applied his brakes when he perceived the cattle truck was 300 yards distant. It is a well proven fact that the furniture truck was parked partly on and partly off the black top in front of Stewart's *Page 196 
driveway. Plaintiff and his minor son are charged with seeing that which they should have been seen. This was an obstruction in the path of the cattle truck and plaintiff and his son well knew or should have known that the cattle truck had to cut to its left; they could anticipate that the cattle truck would reach this obstruction, which it did, before the Ford in which they were travelling. Young Singletary failed to take proper precaution in reducing his speed and placing his car under proper control. This is the meaning which we give to the Judge's statement.
Under the facts as detailed above, and considering the conclusion of the trial judge, it may appropriately be said that no manifest error appears in the judgment from which plaintiff appealed. Like the district judge we are of the opinion that the sole proximate cause of the accident was the negligence of young Singletary.
For these reasons, the judgment appealed from is affirmed.