## SMITH v. FIDELITY MUT. INS. CO. et al.

### No. 14229.

United States Court of Appeals
Fifth Circuit.

July 10, 1953.

Maurice J. Wilson, Robert P. Breazeale, Breazeale, Sachse & Wilson, Baton Rouge, La., for appellant.

St. Clair Adams, Jr., and Adams & Reese, New Orleans, La., for appellees.

Before HOLMES, BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

Russell H. Smith brought this action against Fidelity Mutual Insurance Company, H. E. Frazier and J. A. Hookfin to recover damages for personal injuries arising out of an accident in which a truck driven by plaintiff's servant ran into the rear of a truck owned by Frazier and driven by Hookfin.

In his complaint plaintiff alleged that the driver of defendant's truck was negligent in parking the truck in the center of the north-bound traffic lane of the highway without any lighted rear or side lights or flares of any kind whatsoever, and without leaving fifteen feet of clear pavement for the unobstructed passage of vehicles on the highway, all of which acts were alleged to be in violation of the Louisiana Highway Regulatory Statute, LSA-R.S. 32:241.

The defendants denied negligence on their part and in the alternative, alleged that plaintiff's driver was guilty of contributory negligence in failing to slow the speed of the truck so as to be able to bring the same to a stop within the range of his vision when he became blinded by the headlights of an approaching automobile

550

At the conclusion of plaintiff's evidence the court peremptorily instructed the jury to return a verdict for the defendants. Plaintiff has appealed.

The evidence viewed in the light most favorable to the plaintiff establishes these facts:

This accident occurred on a clear night at approximately eight o'clock P.M. at a point on United States Highway 51 about one and one-quarter miles south of the main part of the town of Kentwood where the highway intersects a gravel road. Highway 51 is a main traveled two lane paved highway which runs in a generally northerly and southerly direction. It was straight and slightly upgrade. On the evening of the day in question plaintiff and his employee-driver Meadows were in a Ford truck proceeding north on the highway. Meadows testified that he was driving at a speed of 30 to 35 miles per hour when he noticed the headlights of an approaching automobile at a distance of 300 or 400 yards. He dimmed his lights in favor of southbound traffic but the approaching vehicle continued coming toward him and the lights grew brighter and brighter. When 200 yards distant the headlights blinded him and although he was getting more and more blinded as he approached this other car he did not slow the speed of his truck at all because as he explained, he had no reason to believe anything would show up in front of him. When the approaching car had proceeded 125 yards south of the point where he was first blinded and his truck in the meantime had covered such distance as its speed carried it, he found himself confronted with a truck standing on the highway in his lane of traffic without any sign or warning of its presence, some 60 feet ahead of him. As the truck loomed in front of him he made an effort to avoid running into it by applying his brakes. He was too close then, however, to avert a collision. The right front end of his truck struck the rear end of the standing truck with such force that it drove the motor of the Ford truck up into cab pushing the heater back, pinning plaintiff to the seat.

The truck with which Meadows collided was a 1946 Chevrolet. It had an aluminum colored van type metal body that was from seven to eight feet wide and eight to ten feet high from the bed of the truck. The body extended about a foot and a half or two feet above the top of the cab and was about a foot wider than the cab on each side of the truck. The truck was equipped with headlights, cab lights and one tail light. It had no side clearance lights nor did it have any reflectors on the back of the body and one approaching the truck from the rear could not see the cab lights. The body of the truck was muddy. Plaintiff described it as a big black object. At the time of the accident the driver of this truck had stopped momentarily waiting for on-coming traffic to pass so that a left turn could be made into a side gravel road. For the purposes of this review it must be conceded that the truck did not have its tail light burning.

■ There have been a great many cases in which this and other courts have considered and discussed facts similar to those which are here present, and in all of them it has been held that it is negligence as a matter of law for motorists to drive an automobile along the highway at such a speed that it cannot be stopped in time to avoid an obstruction discernible within the range of vision ahead. Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238; Shell Oil Co., Inc. v. Slade, 5 Cir., 133 F.2d 518.

This general rule however, is not inflexible, and its application depends on the facts and circumstances of each case. In Waters v. Meriwether Transfer Co., 18 La.App. 18, 137 So. 578, 581, the court considered the exception to the general rule and said:

"* * * Ordinarily, it is always held that a driver of an automobile must see every parked car or object on the right side of the road at night in time to stop his car before colliding with it, nor is he excused because of on-coming bright lights. If bright lights blind him, he must pull to the right and slow down or stop until the

confusion is over. But if the sudden appearance of bright lights prevents him from seeing the parked vehicle and creates an emergency, he is not guilty of negligence, and is excusable, if he meets this emergency with the best possible judgment. In all the cases in which it is held that the driver of an automobile cannot be excused because of being blinded by approaching bright lights, the evidence shows that the driver of the automobile sees the bright lights for a considerable distance in front of him, and proceeds in spite of being blinded. But if the bright lights are brought suddenly into view, and there is no time between the first appearance of the bright lights and the happening of the accident to observe the necessary rules of caution with reference to stopping and pulling to one side, the driver of the automobile cannot be charged with negligence for not stopping."

██ The issue of contributory negligence is ordinarily for the jury and it is only where there is no substantial conflict in the evidence which conditions it, and when, from the undisputed facts, reasonable men in the exercise of a fair judgment would be compelled to reach the same conclusion, that the court may properly withdraw it from the jury. Applying these principles to the undisputed facts of this case we cannot say that the trial judge erred in concluding that Meadows was guilty of contributory negligence as a matter of law and in directing a verdict[1] for the defendants.

Plaintiff cannot rightfully claim that in driving as he did Meadows was in the exercise of due care. When Meadows became blinded by the headlights of the approaching automobile it was his duty to slow down to a speed at which he could stop within the range of his vision. Notwithstanding this clear duty the undisputed evidence shows that he saw the approaching bright lights for a considerable distance in front of him and continued to drive his truck at the same speed in spite

of being blinded. He was without the right to assume that no object was ahead of him. He should have reduced his speed and maintained such control of his truck while this condition existed as to enable him to stop the same at once in case conditions suddenly arose to make this action necessary.

We conclude that the District Judge did not err in directing a verdict for the defendants and that the judgment appealed from should be affirmed.

Affirmed.

---

1. Central Surety & Ins. Corporation v. Murphy, 10 Cir., 103 F.2d 117, 119.