**WESTERN PRODUCTION COMPANY,**
Appellant,

v.

**Nell Rose Holman YARBROUGH et al.,**
Appellees.

No. 16001.

United States Court of Appeals
Fifth Circuit.

June 30, 1956.

Rehearing Denied Aug. 20, 1956.

Welton P. Mouton, Lafayette, La., Mouton, Champagne & Colomb, Lafayette, La., for appellant.

John Wood Anthony, Bogalusa, La., Talley, Anthony & Johnson, James D. Johnson, Jr., Bogalusa, La., for appellees.

Before RIVES, CAMERON and BROWN, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment entered upon a jury verdict awarding the widow and her two minor children a total recovery of $40,000.00 for the death of the husband and father, Edward Yarbrough, as a result of the alleged negligence of appellant's truck driver in an automobile-truck collision which occurred about 9:15 P.M. on January 15, 1954, on U. S. Highway No. 71, approximately ten miles south of Bunkie in the Parish of St. Landry, Louisiana. The basic question presented, raised by motions for a directed verdict and alternatively for new trial below, is the sufficiency of the evidence to support the verdict.

The testimony reveals that, at about 5 P.M. on the afternoon of January 15, 1954, appellant's driver, Joseph Jones, Jr., was driving its two-ton Chevrolet truck in a northerly direction on U. S. Highway No. 71 when he had a flat tire on his right front wheel which required a stop for inspection on the highway; that, after appraising his difficulty, Jones pulled appellant's truck, which was heavi-

ly loaded with oil drilling equipment and had a weight of 28,000 pounds on its axle, partially off the paved portion of the 18 foot wide highway and parked, leaving a portion of the left rear of the truck protruding at disputed distances upon the pavement;[1] that, in any event, Jones did not entirely clear the paved highway with his heavily loaded vehicle, though he testified that to do so would have been impracticable because of the narrow road shoulder,[2] which was then wet and soggy with rain and sloped to a large ditch full of water; that, upon parking and finding himself unable to change the tire without help, Jones set out three reflector-type warnings in the front, back, and on the side of the truck and then left the truck unattended while he went in to Bunkie, Louisiana, for help; that he did not return to the truck for about four hours, and during this time it became dark and the truck was unlighted, and there were no warning signals to reveal its protrusion except for the reflectors, which in the meantime and according to some of appellees' testimony had become covered with road slush and mud to such an extent as to render them insufficient and inadequate as warnings to approaching motorists of the truck's presence; that by this time the highway was also wet, muddy and slippery, the night was dark and misty, and an approaching motorist's vision of the protruding truck was also limited by the dark green color with which it was painted, and further handicapped by the oil, grease and mud with which it was at least partially covered.

Jones returned to the truck about 8 or 8:30 P.M., along with a service station operator named Hall, and together they hoisted the front and rear of the truck upon two jacks, it being necessary for them to replace the flat, right front tire of the truck with one of the tires from the right, rear tandem wheel. While they were on the right side of the parked truck, attempting to switch the tires, they heard a terrific crash and almost immediately thereafter a 1951 Oldsmobile '98 Sedan, driven by the deceased, Edward Yarbrough, struck the rear of their parked truck, turning it over on its right side upon the shoulder of the road, after which the Oldsmobile turned almost completely around and came to a stop upon the highway, facing a direction almost opposite from its original northerly approach. Jones and Hall were alert enough to escape death from being pinned under the capsizing truck by wading through the ditch full of rain water which adjoined the shoulder of the highway, but Edward Yarbrough and a guest passenger named Black, sitting on the front seat of the Oldsmobile, were both killed. Earl Yarbrough, brother of the deceased, was a rear seat passenger, who, though seriously injured, lived and testified at the trial. The Oldsmobile was almost completely demolished, but no appreciable damage was sustained by appellant's truck from having been sideswiped by the Oldsmobile and tipped over.

The sole survivor and only eyewitness to this accident, Earl Yarbrough, conceded several times on cross-examination that his brother was driving at "an excessive rate of speed", though, when pressed, his specific estimate of "excessive" was "between 30 and 35 miles an hour, somewhere around that speed."[3] He further testified that they were driv-

---

1. Appellees' witnesses testified that the left rear of the truck projected upon the pavement about 4 feet, but appellant's witnesses stated that only the left rear wheels of the truck extended upon the pavement for a distance of about 1 foot.

2. The dirt shoulder of the road was approximately 9 feet wide, and the truck about 7 to 8 feet wide.

3. When the court intervened to inquire of this witness whether he understood that "excessive" meant "too much", the witness further qualified his estimate in these words:

"Under the circumstances, Your Honor, that truck was in the road and it was blocked and he was driving too fast. Had it not been blocked, then he wasn't driving at an excessive rate of speed. That is the way I understand 'excessive.' * * * The road was blocked. It was a trap and if an accident did happen, he was driving too fast."

ing along the right-hand lane of the highway immediately before the accident, when they noticed the headlights of an oncoming vehicle, maybe a quarter or a half a mile away, that the oncoming driver "dimmed his lights and in turn my brother dimmed his", about which time "the first thing we saw there popped up in the road was this big truck completely blocking our lane and Ed hit his brakes and the car swerved and that's all I remember." The testimony and inferences from the physical proof further establish that this oncoming vehicle was another truck proceeding south, that Edward Yarbrough swerved to the left and sideswiped this vehicle in an emergency effort to avoid colliding with appellant's parked truck, which maneuver apparently caused the Oldsmobile to bounce away and spin around so as to strike appellant's parked truck with its left front, capsizing the truck into the ditch.

In overruling appellant's pending motions for directed verdict and alternatively for a new trial, upon which it had reserved ruling until after submission and a jury verdict had been returned for appellees, the district court, in its officially unreported opinion, carefully summarized many of the evidentiary factors showing actionable negligence by appellant's driver, and the lack of any compelling inference of contributory negligence barring recovery under Louisiana law. Specifically, the court recounted

that version of the testimony presumably accepted by the jury, showing negligence by appellant's driver in leaving the highway partially blocked to oncoming traffic, in failing to have his truck lights burning at the time of the accident,[4] and in using, instead of burning flares, the reflector-type warnings which the testimony showed were not readily visible because of the mud and slush thrown upon them by passing traffic. The court further rejected any conclusive inference of contributory negligence barring recovery from Earl Yarbrough's pure conclusion, contrary to his specific estimate, as to the Oldsmobile's "excessive" speed, and from the other inferential proof of speed from distance traveled per hour since inception of the journey, as well as from the evidence of the extensive damage to the Oldsmobile and the force of the impact necessary to overturn appellant's truck.[5] Finally, the court determined that the proof did not show contributory negligence from Edward Yarbrough's failure to maintain a proper lookout, since the night was dark and misty, the truck was also dark and barely visible, and other "unusual circumstances" justified the jury's inference that the deceased had reacted normally in an emergency situation.[6]

In spite of the district court's obviously careful and painstaking analysis of the testimony and reasonable inferences therefrom, appellant insists that this was no "exceptional circumstances

4. The driver, Jones, and another witness did testify that the front and rear truck lights were burning, but a number of motorists who passed before the collision testified to the contrary, thus presenting a factual conflict to be resolved by the jury.

5. In this connection, the court reasonably concluded that a permissible jury inference existed that the approximate 50 miles per hour average speed maintained by the Oldsmobile could have been accomplished by high speeds earlier in the journey, and did not establish conclusively that its speed was excessive at the time of the accident; and, further, that much of the Oldsmobile's damage resulted from its "sideswiping" the southbound truck, rather than from striking

appellant's parked truck, and that the truck's capsizing from the force of the impact did not necessarily indicate "excessive" speed, since it was then resting only upon jacks and the soft mud shoulder of the road.

6. Here, the court referred to the testimony of other motorists who passed the point of collision before the Yarbrough car, and their stated inability to see the reflector warnings or the truck. The court further noted that the necessity of dimming the Oldsmobile lights for the southbound truck threw them downward and underneath appellant's parked truck, justifying a reasonable jury inference that the truck was invisible until collision was imminent.

case" justifying jury submission under Louisiana law, because Earl Yarbrough's own testimony conclusively establishes that the deceased was driving at an "excessive speed", which, under the circumstances prevailing, manifestly prevented his compliance with the Louisiana rule that a motorist must maintain a proper lookout and drive at such speed as to be able to stop within the range of his headlight vision. See e. g., Ledoux v. Beyt, La.App., 35 So.2d 472. Appellant further invokes Louisiana authority to the effect that, absent clear proof of exceptional circumstances or an emergency situation rendering an effective lookout and timely avoiding action impossible, there can be no recovery in such rear-end collision cases; especially where, as here, the proof is allegedly conclusive that the deceased Yarbrough did not maintain a proper lookout or reduce his speed, and was not so blinded prior to the collision by any approaching headlights or the dimming operation as to justify his failure to avoid the collision —on which theory appellant vigorously insists that appellees were not entitled to any jury submission because of Edward Yarbrough's contributory negligence, in accordance with the Louisiana general rule heretofore applied by this Court. See Smith v. Fidelity Mutual Insurance Co., 5 Cir., 206 F.2d 549.

Appellees rely mainly for affirmance upon their version of the proof accepted by the jury and summarized by the district court, viz.: negligence of the driver, Jones, in parking the truck without burning lights so as partially to obstruct the highway, and his failure to protect oncoming traffic by maintaining the reflectors in a visible condition. As refuting appellant's charge of contributory negligence, they point to Earl Yarbrough's specific estimate that the deceased was driving well within the legal speed limit at the time of the accident, and the other testimony heretofore noted to the effect that, because of the necessity of the deceased dimming his lights and other exceptional circumstances limiting his visibility, he was guilty of no contributing fault requiring appellees' forfeiture of their right of recovery under Louisiana law.

In Atkins v. Halliburton Oil Well Cementing Co., 5 Cir., 196 F.2d 876, 878, the late Judge Russell, speaking for this Court in reversing a judgment granting a motion for judgment n. o. v. for plaintiff's contributory negligence in a Louisiana rear-end collision case, very appropriately stated the qualification of the Louisiana general rule upon which appellant relies as follows:

"While it is true that under the Louisiana law the general rule is that drivers of automobiles must keep their vehicles under such control as to be able to bring them to a complete stop within range of their vision, and, at night, within the distance which their headlights project, and that a failure to do so is negligence, it is recognized that this is no hard and fast rule which will govern every case in which a motorist collides with a stationary object in the highway, but that each case must be determined upon the basis of its facts. Exceptions to the general rule have been frequently recognized and enforced both by the Courts of Louisiana and this Court. Under the peculiar facts of this case, to some of which we have adverted, we think that the general rule that a driver is charged with seeing what is within the range of his visibility and must so operate the car as to avoid an obstacle that is seen should not be applied, and we conclude that the Court erred in granting the motion for judgment notwithstanding the verdict."

In affirming a judgment entered upon a jury verdict for the plaintiff under somewhat analogous facts, this Court had previously stated that same Louisiana general rule and its qualification here applicable, as follows:

"Reliance is placed upon the general rule prevailing in Louisiana that 'when the driver of an automobile is blinded by the lights of an-

other car or by dust, smoke, etc., that it is his duty to reduce the speed of his car to where he can bring it to a stop immediately if faced with an emergency and it is his duty to bring his car to a complete stop if necessary.' Harper v. Holmes, La.App., 189 So. 463, 465. The driver of an automobile on the public highways at night 'must keep his car under such control as to be able to bring it to a complete stop within the distance which his headlights project in front of him.' Goodwin v. Theroit, La.App., 165 So. 342, 344. The Louisiana courts have made it clear in many cases that the general rule is not a hard and fast one which will operate to preclude recovery in every case in which a motorist fails to stop and collides with an object on the highway. In each case the particular facts and circumstances must be considered and, 'in the final analysis, the facts of each case will determine the question of negligence.' Herring v. Holicer Gas Co., La.App., 22 So.2d 868, 871, and cases cited." New Amsterdam Casualty Co. v. Ledoux, 5 Cir., 159 F.2d 905, 907.

As this Court specifically noted in Car & General Insurance Corp. v. Cheshire, 159 F.2d 985, 987, 988, this exception to the Louisiana rule is particularly applicable where, as here, there is some proof that the insufficiently lighted vehicle left negligently protruding into the right-of-way was deceptive in appearance to approaching motorists because of its color, condition and structure.[7]

In the instant case, the testimony referable to the issues of negligence and contributory negligence was sharply disputed in many material particulars, especially as to the distance which appellant's parked truck encroached upon the highway, whether or not Jones set out proper flares, whether he maintained the reflectors properly, whether they were placed a sufficient distance away to give timely warning, whether the truck lights were burning at the time of collision; and whether the deceased was maintaining a proper lookout, driving at a reasonable rate of speed, and reacted as a reasonably prudent driver would have under all the proven circumstances—all of which conflicting testimony presented the usual factual dispute appropriate for jury resolution. Great American Indemnity Co. v. Cormier, 5 Cir., 187 F.2d 107, 109.

■■ From our review of the testimony and the Louisiana authorities, and acknowledging our duty under the Federal rule to indulge all reasonable facts and inferences proved in support of the verdict,[8] we therefore conclude that the district court correctly ruled the exceptional circumstances proven justified the submission and verdict, and did not require direction of a verdict for contributory negligence by the deceased as a matter of law. Hicks v. Tilquit, La.App., 82 So.2d 100; New Amsterdam Casualty Co. v. Ledoux, supra; cf. Smith v. Fidelity Mutual Ins. Co., 5 Cir., 206 F.2d 549.

The judgment is

Affirmed.

7. The Cheshire case, supra, also involved a Louisiana nighttime rear-end collision, in which the same dark green color and structure of the heavily loaded and insufficiently lighted tank-trailer left negligently blocking the highway was also apparently not readily visible to the three boys killed. Here, we think the jury was warranted in an inference that the protrusion of appellant's parked truck was imperceptible to the deceased Yarbrough, both because of its dark green color and condition, causing it to blend in with the night, and because its tandem-drive structure, 4 feet high from the ground, was not readily visible to the deceased with his headlights in the "dimmed" or deflected position.

8. See this Court's comments on the broader scope of appellate factual review in Louisiana in Wright v. Paramount-Richards Theatres, 5 Cir., 198 F.2d 303, 306; Employers' Liability Assurance Corp. v. Madden, 5 Cir., 219 F.2d 205, 207.